# CHARLESTON.

## MONONGAH COAL & COKE CO. *v.* FLEMING *et al.*

Submitted June 8, 1896—Decided Dec. 2, 1896.

1. CONTRACT OF SALE—OPTIONS.

    The following instrument *held* to be, not an option, but an unconditional and absolute contract of sale: "Exhibit No. 3. I have this day sold to J. E. Watson the coal under my farm on West Fork river, adjoining lands of S. L. and M. T. Vincent, W. S. Sandy's heirs, and others, containing about 80 acres, reserving therefrom one acre, and where I may elect. Said Watson is to pay one-fourth down on the first day of May, 1890, when I am to make deed for said coal as per option made on the 25th of September, 1888. It is further agreed that I am to have interest on all said purchase money from 1st day November, 1889. The deferred payments in one, two, and three years from 1st day May, 1890. J. A. Fleming."

2. CONTRACT OF SALE—SIGNATURE TO CONTRACT OF SALE.

    Such a contract in writing, to be binding on the seller of real estate, is not required to be signed by the buyer who has accepted it; for it is signed by the vendor, the party who made the written contract of sale, the party sought to be charged thereby, and no writing signed by the vendee is required to prove the vendee's obligation to pay the consideration price, or to make it binding upon him. See chapter 98 of the Code of 1891 (page 715).

A. B. FLEMING and JOHN BASSEL for appellant.

Holt, President:

On appeal from a decree of the Circuit Court of Harrison county, entered on the 20th day of September, 1895, dismissing plaintiff's bill brought for specific execution of a contract for the sale of coal *in situ* as part of the realty.

By contract dated the 21st day of May, 1888, defendant John A. Fleming executed to J. E. Watson a written option for the purchase of the coal in controversy. The time within which Watson had the option to buy having expired on the 25th day of September, 1888, Fleming executed to Watson the following option for the same land: "Exhibit No. 2. Article of Agreement. This agreement, made and entered into this 25th day of Sept., 1888, between John A. Fleming of the first part, and J. E. Watson of the second part, witnesseth, that the said party of the first part hereby agrees and proposes to sell to the said party of the second part all the coal underlying the certain land situate in Harrison county, West Virginia, described as follows: On West Fork river, adjoining lands of S. L. and M. T. Vincent, Wm. S. Sandy's heirs, and others, containing about eighty acres, excepting and reserving therefrom the coal underlying the following parcel thereof, five acres, if the party of the first part so desires, and where he may elect, together with all necessary rights of way for the mining and removing of all said coal over or under the surface, as well as removing the coal from coterminous lands over and under same, and for necessary drainage and ventilation, upon the following considerations, that is to say, the said party of the second part shall pay to the said party of the first part the sum of ($30) thirty dollars per acre in manner and time as follows: One-half of purchase money cash on day of sale, and the residue on twelve months, with interest from day of sale, but the said party of the second part is and shall be entitled to the full term of twelve months from and after the date hereof to elect whether or not he will purchase the said real estate, rights, and privileges at the price and upon the terms hereinbefore specified; and, in case the party of the second part shall elect to purchase the same within the time aforesaid, he shall make and signify such election by paying or de-

livering to the said party of the first part the consideration aforesaid, and thereupon the said party of the first part shall execute and deliver to said party of the second part, that is to say, J. E. Watson, a sufficient deed of conveyance, with relinquishment of dower, of and for the coal and rights and privileges aforesaid; but in case the said party of the second part shall fail to elect to purchase said coal and said rights and privileges within the period, and upon the terms, hereinabove specified, then this agreement shall cease and determine, time being hereby made of the essence of the contract. Witness the following signatures and seals. John A. Fleming." This option also ran out, but, before the time to which it had been extended, viz. 1st January, 1890, Fleming executed to Watson the following instrument: "Exhibit No. 3. I have this day sold to J. E. Watson the coal under my farm on West Fork river, adjoining lands of S. L. and M. T. Vincent, W. S. Sandy's heirs, and others, containing about 80 acres, reserving therefrom one acre, and where I may elect. Said Watson is to pay one-fourth down on the first day of May, 1890, when I am to make deed for said coal as per option made on the 25th of September, 1888. It is further agreed that I am to have interest on all said purchase money from 1st day November, 1889. The deferred payments in one, two, and three years from 1st day May, 1890. J. A. Fleming." On the 5th day of May, 1890, plaintiff Watson made a tender to J. A. Fleming of six hundred and ten dollars and eighty seven cents, the amount due as the cash payment, which is not disputed; but defendant Fleming refused to accept the money, or to specifically execute the contract, and this bill was filed for that purpose. Some time before that, Watson had sold and assigned his interest therein to plaintiff J. N. Camden, and J. N. Camden had sold and assigned his interest therein to plaintiff the Monongah Coal & Coke Company. Plaintiffs averred that they were ready and desirous of paying the purchase money; that the land had been surveyed, and contained but seventy two and three-fourth acres; that defendant John F. Shore had by deed dated the 27th day of February, 1880, conveyed to Fleming the larger part of said tract of land, reserving on

the face of the conveyance a lien for the purchase money which had not been paid or released; and they prayed for a specific execution of the contract. Defendant Shore let the bill be taken as for confessed, but defendant Fleming answered, claiming that the contract sued on was but an option, and was only intended to extend the option of 25th day of September, 1888, until the 1st day of May, 1890. So that the whole question turns upon the construction and legal effect of this last instrument.

According to its face (and we have nothing else to go by) I can see no room for two opinions as to its nature and legal effect. It plainly stands in contrast with the true option which preceded it, as in no particular optional, but as in all respects an absolute sale. It was plainly an acceptance and closing up the option of 25th September, 1888, for it refers to that instrument for the character of deed to be made, and the description of the land. No other reason is given, or in any wise appears, why this contract should not be specifically executed. On this subject of unilateral contracts called "options," see *Dyer* v. *Duffy*, 39 W. Va. 148 (19 S. E. 540); *Watson* v. *Coast*, 35 W. Va. 463 (14 S. E. 249); *Barrett* v. *McAllister*, 33 W. Va. 738 (11 S. E. 220).

Upon principle, such a contract for the sale of real estate, in order to be binding, is not required to be signed by both parties, for it is signed by the owner and seller of the land, the party sought to be charged and compelled to convey. And the contract does not lack mutuality, for, the payment of the consideration being in money, no writing is required, either to prove the agreement of the buyer to pay, or to make such agreement binding on him; and it has long been the practice in this state to enforce against the vendor, who alone has signed, a title bond for the sale and conveyance of real estate in favor of the vendee and his assignee, for if the vendee has performed his part of the agreement, is ready and willing to perform it, or has been prevented from performing it by the wrongful act of the vendor, the vendee will not be confined to his action at law for the amount of the penalty, but may choose his remedy in equity for specific performance. See our statute of frauds as to verbal agreements (chapter 98, p. 715, Code

1891); 22 Am. & Eng. Enc. Law, p. 970, and cases cited in note 6; Browne, Frauds (5th Ed.) §§ 365, 366; *Hopson* v. *Trevor* (1723) 1 Strange, 533.

Reversed and remanded, with direction to cause the contract of sale to be specifically executed.