761 P.2d 1073

ALPHA TAX SERVICES, INC., an Arizona corporation; and Glenn D. Grote and Pamela Grote, his wife, Plaintiffs/Counterdefendants/Appellants,

v.

Joseph STUART and Jacqueline (Jackie) Stuart, husband and wife; Phillip Caudill and Catherine Caudill, husband and wife, dba Caudill-Stuart Tax Service, Defendants/Counterclaimants/Appellees.

No. 2 CA–CV 88–0018.

Court of Appeals of Arizona, Division 2, Department A.

March 10, 1988.

Reconsideration Denied May 3, 1988.

Review Denied Oct. 18, 1988.*

* GORDON, C.J., of the Supreme Court, did not participate in the determination of this matter.

Smith & Feola, P.C. by David J. Itzkowitz, Phoenix, for plaintiffs/counterdefendants/appellants.

Burger, Gibson, Matheson, Whitney & Weber by John E. Burger and May P. Gin, Mesa, for defendants/counterclaimants/appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a motion for summary judgment. The facts shall be considered in the light most favorable to appellant. *Gibraltar Escrow Company v. Thomas J. Grosso Investment, Inc.,* 4 Ariz.App. 490, 421 P.2d 923 (1966).

Alpha Tax Services, Inc. (Alpha), is an Arizona corporation engaged in providing tax preparation services. On January 3, 1980, Catherine Caudill began her employment with Alpha as city manager in charge of three offices in Mesa, Arizona. On January 1, 1981, Jacqueline Stuart began her employment with appellant as office manager of Alpha's main branch office at 1650 East Broadway, Mesa, Arizona. Their duties consisted primarily of tax preparation, consultation with clientele and management activities. Each year of employment, Caudill and Stuart executed written employment agreements. All these agreements had the following provisions:

"*Solicitations:* agree to not solicit the tax business of Company clients, after having worked for the Company.

*Other Business:* agree to not discuss the sale of any other product or service with client while dealing with his tax prepara-

tion, and to not maintain a client list for this or any other purpose."

On September 30, 1985, Stuart and Caudill ended their employment with Alpha and opened their own tax preparation service in Mesa. In connection with the opening of their offices, Stuart and Caudill mailed Alpha clients a flier announcing the opening of their office together with a $10 discount coupon which could be used in the preparation of 1985 tax returns. Fliers were also mailed indiscriminately in the Mesa area and advertisements were placed in the newspapers.

Stuart used the names from a client list that she took from Alpha to send Caudill–Stuart fliers and discount coupons to Alpha clients. She also used the client list to contact more than 20 Alpha clients by telephone. It was estimated that approximately 320 to 330 tax returns were prepared by Caudill–Stuart Tax Services on behalf of former Alpha clients.

On April 2, 1986, this lawsuit was filed. Appellees answered and filed a counterclaim against Glenn D. Grote and Pamela Grote, the principals of Alpha.

Appellees filed a motion for summary judgment alleging that the clause entitled "Solicitation" was vague and unrestricted as to geographical area and duration of time and, therefore, unenforceable. Alpha filed a cross-motion for summary judgment claiming that the provisions in the employment contract were valid and should be upheld by the court.

Following oral argument, the trial court found that the provision entitled "Solicitations" was legally insufficient and unenforceable for vagueness and for its lack of limits as to space and time. The court further found that there is no definition of "company clients" in a business where there is a one-shot transaction each year with no ongoing relationship. In addition, the court ruled that there was no evidence that any of the appellees "maintained a client list" but only that one of the appellees took with her a daily assignment record which was prepared for Alpha's business purposes.

Alpha contends the trial court erred in holding that the employment agreement was invalid because it had no geographical restrictions and because of vagueness. We agree. The contract in this case does not contain a typical covenant not to compete. The agreement does not restrict its former employees from engaging in their usual trade or profession. See *Lessner Dental Laboratories, Inc. v. Kidney,* 16 Ariz.App. 159, 492 P.2d 39 (1971). This type of agreement, which has been called an antipiracy or hands-off agreement, is less restrictive than a covenant not to compete and is designed to prevent former employees from using information learned during their employment to divert or to steal customers from the former employer. Such an agreement, statewide in scope, is not considered unreasonable or oppressive and is valid. *Olliver/Pilcher Insurance, Inc. v. Daniels,* 148 Ariz. 530, 715 P.2d 1218 (1986).

The courts have not found the word "solicit" to be vague nor had trouble defining it. In the case of *Aetna Bldg. Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11 (1952), modified on other grounds, *American Paper & Packaging Products, Inc. v. Kirgan,* 183 Cal.App.3d 1318, 228 Cal.Rptr. 713 (App. 2 Dist. 1986), the court said:

" 'Solicit' is defined as: 'To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite.' Black's Law Dictionary, 3rd ed., p. 1639. 'It implies *personal* petition and importunity addressed to a particualr (sic) individual to do some particular thing, * * *.' [citation omitted] It means: ' "To appeal to (for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain." ' [citation omitted]

Merely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss

business upon invitation of another party constitute solicitation on the part of the invitee. Equity will not enjoin a former employee from receiving business from the customers of his former employer, even though the circumstances be such that he should be prohibited from soliciting such business. [citations omitted] West was entitled to accept business from Aetna's former customers and such acceptance, by itself, did not constitute solicitation." [1]

■■■ It is clear that the newspaper advertisements were not solicitations because they were not personal petitions addressed to particular individuals. The same cannot be said of all of the mailings. They not only contained an announcement of the opening of the service, but they were addressed personally to customers of Alpha and in addition contained a discount if the customer availed himself of their service. They were personal solicitations. However, some of the mailings were sent by a mailing service to "Resident" in the form of a "Val-pak" which contained not only the appellee's discount coupons, but also the discount coupons of many other businesses. This mailing was not a personal solicitation.

■■■ There is also evidence that personal phone calls were made to Alpha clients. We have not been apprised of the contents of these calls. In an appeal from a summary judgment we view all inferences in favor of the appellant. *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.*, 143 Ariz. 527, 694 P.2d 815 (App.1984). One can infer that these phone calls were solicitations for business.

■■■ The agreement prevented the appellees from maintaining a client list. It was Alpha's office procedure to keep a daily client log which contained the name and address of each client and the name of the employee assigned to the client. While at Alpha, Stuart, who was the office manager, used this log for billing purposes. When she left Alpha, she took a copy of the log with her to her new business and used it to send out mailings. The trial court did not believe that appellee Stuart violated the agreement because she did not make the list herself, in other words, it was already in existence. We believe this interpretation is too restrictive and is incorrect. The purpose of the clause is to prevent an employee from taking and using a client list for the purpose of pirating Alpha's clients. We believe that as used in this agreement, the phrase "maintain a client list" means to keep, hold or possess a client's list, and not merely "to prepare" a client list as apparently the trial court believed.

Appellants have requested and are entitled to attorney's fees on appeal which shall be awarded upon appellants' compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

Reversed and remanded for further proceedings consistent with this opinion.

LACAGNINA, C.J., and HATHAWAY, J., concur.

1. See also *Golden State Linen Service, Inc. v. Vidalin,* 69 Cal.App.3d 1, 137 Cal.Rptr. 807 (App. 1 Dist. 1977).

