946 P.2d 464

**HILB, ROGAL AND HAMILTON COMPANY OF ARIZONA, INC., an Arizona corporation, Plaintiff–Appellee,**

v.

**Douglas E. McKINNEY, a single man, Defendant–Appellant.**

No. 1CA–CV97–0003.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 11, 1997.

Reconsideration Denied Nov. 7, 1997.

As Amended Dec. 24, 1997.

Fennemore Craig, P.C. by Marc H. Lamber, William L. Thorpe, Phoenix, for Plaintiff–Appellee.

Surrano & Massey, P.C. by Daniel P. Massey Kenneth Januszewski, Phoenix, for Defendant–Appellant.

LANKFORD, Judge.

Douglas McKinney appeals the trial court's summary judgment in favor of Hilb, Rogal and Hamilton Company of Arizona, Inc. ("HRH"). The trial court ruled that McKinney breached his anti-piracy agreement with HRH, his former employer, when he sold insurance to a former customer of HRH. Because HRH had no protectable business interest in the former customer and because the agreement provides no remedy in this situation, we reverse.

The facts are as follows. McKinney was employed by HRH, a general insurance agency and brokerage company. McKinney executed a "Nonpiracy Agreement," which precluded McKinney from soliciting, placing or accepting business from HRH's customers for two years following termination of his employment with HRH.[1]

While employed by HRH, McKinney was in charge of the Bell Ford account. Bell Ford was insured through HRH when McKinney resigned in July 1993 and went to work at Peak Insurance Group ("Peak"). In April 1994, Bell Ford did not renew its insurance through HRH, even though HRH bid on the account. Instead, Bell Ford obtained coverage through an agency that is not involved in this action.

---

1. McKinney executed this agreement with Lasher–Cowie, Inc., which was subsequently acquired by HRH. The agreement expressly applies to Lasher–Cowie's successors-in-interest.

In April 1995, the Bell Ford account was again up for renewal. McKinney bid on the Bell Ford account but HRH did not. Bell Ford accepted McKinney's bid and obtained coverage through Peak.

HRH sued McKinney to enforce the terms of the anti-piracy agreement. This agreement provides in relevant part that:

> EMPLOYEE agrees that for a period of twenty-four (24) months following the date of termination for any reason of employment with EMPLOYER that he shall not acting alone or in conjunction with others directly or indirectly;
>
> a) Solicit, place, accept or aide [sic] in the replacement or renewal of insurance of any kind or character solicited or placed by EMPLOYER for any account as defined in paragraph 5 of this agreement.[2]

Paragraph ten of the anti-piracy agreement provides remedies for breach of the agreement:

> If EMPLOYEE violates any provisions of this agreement, EMPLOYER in addition to injunctive relief hereinafter provided shall be entitled to recover its damages. Damages shall be determined by multiplying the annual commission income of any account which cancels or transfers its business as a result of the violation of a covenant contained in this agreement by one and one-half. The annual commission income of such accounts shall be the commissions earned for the twelve months before such termination or cancellation....

McKinney moved for summary judgment, arguing that the non-competition covenant was unenforceable because it was unreasonable, was given without consideration and was not incidental to another lawful agreement. He argued that because Bell Ford was no longer buying its insurance through HRH, HRH had suffered no loss of commission as a result of his sale of insurance to Bell Ford and HRH had no protectable business interest in the account.

HRH filed a cross-motion for summary judgment, arguing that McKinney violated the clear terms of the agreement by selling insurance to Bell Ford less than two years after he left HRH. HRH also maintained that if the agreement was unenforceable merely because HRH no longer had the Bell Ford account, former HRH agents might attempt to "park"[3] a customer's account with another brokerage for a short time to circumvent their obligations under the agreement.

The trial court granted HRH's motion. The court concluded that the anti-piracy agreement was valid and enforceable and precluded McKinney from seeking a former customer's business during the two-year period of the agreement. It also found that the liquidated damages provision of the agreement was not a penalty and thus was enforceable.

The court denied McKinney's motion for a new trial and entered judgment in favor of HRH in the amount of $42,016.50, which was one and one-half times the amount of commission on the Bell Ford account during the last year it was insured through HRH. The court also awarded HRH its attorneys' fees in the amount of $7,500. On appeal, McKinney argues that the trial court erred in enforcing the restrictive covenant and awarding damages because (1) HRH had no protectable interest in Bell Ford's business when McKinney bid on it, and (2) HRH suffered no actual damages.

In reviewing the trial court's grant of summary judgment, we view the evidence most favorably to the party opposing the motion. *E.g.*, *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 821 P.2d 725 (1991). While we must exercise caution in entering an order directing summary judgment in favor of

---

**2.** Paragraph 5(a) defines "account" as follows:

(a) Account means a person, firm or corporation which is purchasing insurance or related services through EMPLOYER at the time of termination of employment and which such account was produced by EMPLOYEE, assigned to EMPLOYEE for servicing by EMPLOYER, or which EMPLOYEE has significant contacts with the account or the file for the account for the purposes of providing services to such account either alone or in conjunction with other EMPLOYEES of EMPLOYER.

**3.** "Parking" is a former employee's temporary diversion of a customer's insurance to another unrelated entity in order to later obtain the insurance business.

appellant, we are free to do so where the facts are uncontroverted. *E.g., Nazay v. Miller,* 949 F.2d 1323, 1328 (3d Cir.1991); *Trimmer v. Ludtke,* 105 Ariz. 260, 263, 462 P.2d 809, 812 (1969). In deciding whether the appellant is himself entitled to judgment, we, like the trial court, view the evidence against him. *Cf. United Bank of Arizona v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (1991) ("[A]ppellate courts apply the same standard as that used by the trial court in ruling on the summary judgment in the first instance.").

## I.

We first consider whether the restrictive covenant is unenforceable because HRH had no protectable interest in Bell Ford's business. There are two types of restrictive covenants: covenants not to compete and anti-piracy, or "hands off," agreements. A covenant not to compete precludes former employees from working in the same business as the employers for certain time periods in specified areas. *Bryceland v. Northey,* 160 Ariz. 213, 772 P.2d 36 (App.1989); *Amex Distrib. Co., Inc. v. Mascari,* 150 Ariz. 510, 724 P.2d 596 (App.1986). Covenants not to compete are disfavored and thus are strictly construed against employers. *Bryceland,* 160 Ariz. at 216, 772 P.2d at 39; *Amex Distrib. Co., Inc.,* 150 Ariz. at 514, 724 P.2d at 600.

■ McKinney and HRH, on the other hand, entered into an anti-piracy agreement. Such an agreement restricts the terminated employee from soliciting customers of his former employer or making use of confidential information from his previous employment. *Olliver/Pilcher Ins., Inc. v. Daniels,* 148 Ariz. 530, 531, 715 P.2d 1218, 1219 (1986). Because it is less restrictive on the employee (and thus on free market forces) than a covenant not to compete, an anti-piracy agreement ordinarily is not deemed unreasonable or oppressive. *Id.* at 531–32, 715

P.2d at 1219–20; *Alpha Tax Serv., Inc. v. Stuart,* 158 Ariz. 169, 171, 761 P.2d 1073, 1075 (App.1988).

Nevertheless, an anti-piracy agreement may be so restrictive in its scope and result that it is unenforceable. The *Olliver/Pilcher* court found that the covenant before it was unreasonable because it subjected the former employee to payment of a penalty for every Olliver/Pilcher customer who transferred to the employee's new employer, even if the employee did not solicit the customer and was not responsible for obtaining the business. 148 Ariz. at 532, 715 P.2d at 1220.

■ A restrictive covenant—whether a covenant not to compete or an anti-piracy agreement—is enforceable as long as it is no broader than necessary to protect the employer's legitimate business interest. *See Bryceland,* 160 Ariz. at 216, 772 P.2d at 39; *Amex Distrib. Co., Inc.,* 150 Ariz. at 515, 724 P.2d at 601 (citing *Olliver/Pilcher, supra*). The burden is on the employer to prove the extent of its protectable interest. *Id.*

■ We hold that HRH had no protectable interest in the Bell Ford account. It had such an interest when McKinney signed the anti-piracy agreement and when he left HRH, because Bell Ford was still a customer. However, HRH's protectable interest in maintaining its relationship with Bell Ford ended when it lost the account, through no action taken by McKinney, and then chose not to pursue Bell Ford's business. The business ties between HRH and its customer by then had been completely severed. It was no longer reasonable for HRH to prevent McKinney from dealing with Bell Ford because HRH no longer had a protectable interest in the account.[4] Accordingly, we reverse the summary judgment in favor of HRH.

## II.

■ There is another, independent reason for reversal: The contract itself indicates

---

4. HRH argues that if this protection of former accounts is taken away, it could not prevent terminated HRH employees from "parking" their customers in order to do business with these customers during the two-year anti-piracy period without violating the agreement. However, the anti-piracy agreement by its own terms would prevent this. If this situation occurred due to the efforts of the terminated employee, the employee would be aiding in the replacement of insurance placed by HRH and thus would be in violation of the agreement. Moreover, the record contains no evidence that McKinney "parked" the Bell Ford account.

that McKinney's conduct was not actionable. Although Bell Ford falls within the contract definition of "account," the contract pointedly provides no remedy in this situation.

HRH suffered no actual damages. Paragraph ten of the contract indicates that the agreement covers actions of the terminated employee that cause a customer to cancel or transfer its insurance business. Damages are calculated on the basis of the annual commission income of an account that "cancels or transfers its business *as a result of* the violation of a covenant" in the anti-piracy agreement. (Emphasis added).

This clause does not support an award of liquidated damages against McKinney. No violation of the agreement caused Bell Ford to cancel or transfer its business with HRH.[5] HRH had already lost Bell Ford as a customer and therefore experienced no lost income; because the damages clause provides no remedy, we find no violation. Under the clear language of the damages provision, HRH was not entitled to an award of damages against McKinney arising from the Bell Ford account.

### III.

In summary, the anti-piracy agreement is not enforceable as to the Bell Ford account

because HRH no longer had a protectable business interest in the account when McKinney sold insurance to Bell Ford in 1995. Furthermore, the contract provides for no damages because McKinney's action did not cause Bell Ford to cancel or transfer its business with HRH. Therefore, we reverse the judgment in favor of HRH and remand for entry of judgment in favor of McKinney.

McKinney requests an award of attorneys' fees incurred in the trial court and on appeal pursuant to A.R.S. § 12–341.01. Because McKinney is the prevailing party in this appeal, in our discretion we grant his fees on appeal, subject to compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure and with *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983). We leave the award of attorneys' fees incurred in the trial court proceedings to that court on remand.

KLEINSCHMIDT, P.J., and FIDEL, J., concur.

---

**5.** HRH argues that McKinney may not raise this issue on appeal because he did not adequately argue the damages provision in the trial court. Although this argument was not fully developed in the trial court, McKinney sufficiently preserved it for appellate review. The anti-piracy agreement was in the trial court record and McKinney's attorney referred to the causation issue at oral argument on the motions for summary judgment.