580 S.E.2d 865

Mark CONLEY and Patricia Conley,
Plaintiffs Below, Appellants,

v.

Billy JOHNSON and Martha R. Johnson,
Defendants Below, Appellees.

No. 30653.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 15, 2003.

Decided April 16, 2003.

James A. Walker, Esq., Logan, for Appellants.

John R. Glenn, Esq., Logan, for Appellees.

PER CURIAM.

This is an appeal by Mark Conley and Patricia Conley, his wife, from an order of the Circuit Court of Logan County granting the defendants below, Billy Johnson and Martha R. Johnson, summary judgment in a contract action. In rendering summary judgment, the circuit court, in effect, found that there was no genuine issue of material fact in the case and that the Conleys were not entitled to the relief which they sought. On appeal, the Conleys claim that there were issues of material fact and that the court erred in entering summary judgment for the Johnsons.

## I.

## FACTS

Billy and Martha R. Johnson, who were the defendants below and who are the appellees in the present proceeding, owned a tract of land situated on the Guyandotte River in Logan County, West Virginia. Prior to the events giving rise to the present action, the land was divided into seven lots. A plat of the division showed the lots, designated as Lot 1 through Lot 7. Lot 7, which contained 4.69 acres, was considerably larger than the others.

The Johnsons constructed a new house on Lot 7, and when it was almost completed, they orally agreed to sell it, as well as "two lots," to the appellants, Mark and Patricia Conley, for $125,000. At the time, according to the Conleys, Billy Johnson provided them with a copy of the plat showing the division of the Johnson property into seven lots.

Shortly after the oral agreement was reached, Martha R. Johnson prepared a written memorandum setting forth the agreement. The written memorandum stated:

I Billy J. Johnson & Martha R. Johnson agree to sell Patricia & Mark Conley New House & two lots for One Hundred and twenty-five thousand dollars ($125,000.00) at Lilly's Branch on Saw Mill Rd.

Billy J. Johnson and Martha R. Johnson signed the memorandum on September 26, 2000, and provided a copy of it to the Conleys. The Conleys did not sign the memorandum.

According to the complaint instituting the present action, the Conleys understood, at the time of entering into the agreement, that the Johnsons were selling them the new house located on Lot 7 of the plat provided to them, as well as the actual Lot 7 as shown on the plat, and the adjoining Lot 6. However, after the agreement was entered into, according to the Conleys, the Johnsons resubdivided the property so that Lot 7, as shown on the original plat, was resubdivided and designated new Lots 7, 8 and 9. They thereafter apparently proposed to transfer the new Lots 7, 8 and 9 (which had previously been only the old Lot 7) to the Conleys in satisfaction of the agreement. The Conleys suggest that such an arrangement has not been contemplated by them and that such an arrangement had the effect of depriving them of Lot 6 as shown on the original plat. As a consequence, the Conleys prayed that the circuit court require the Johnsons to carry out their bargain and convey to them Lots 6 and 7 as shown on the original plat.

In response to the complaint, the Johnsons asserted that at the time the memorandum was executed, it was the purpose of the agreement that the Conleys receive the new house and the three lots (created out of the old Lot 7). In effect, the Johnsons claimed that the Conleys were only entitled to the new house and Lot 7 as shown on the original plat.

After the filing of pleadings and some initial discovery, the Johnsons moved for summary judgment. Without conducting an evidentiary hearing, the circuit court granted this motion. In the order granting the motion, which does not explicitly state the precise reasons for the court's granting the motion, the court stated:

The Court finds the following facts that the purported written alleged [sic] to be a contract was prepared by Martha Johnson, a lay person, herein and executed only by the Defendants, the Plaintiffs not having executed the same. . . .

In so stating, the court inferred that since the Conleys had not signed the memorandum, they did not have an enforceable contract and they were not entitled to the relief which they sought. The court also made remarks indicating that the court was concerned that there was a lack of mutuality and meeting of the minds in the agreement between the parties and suggested that, for that reason, the agreement between the parties was not enforceable.

## II.

## STANDARD OF REVIEW

■ In Syllabus Point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), the Court stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

■ Further, in the summary judgment context, the Court stated in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), that: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

## III.

## DISCUSSION

■ As has been previously stated, it appears that one reason the circuit court in the present case granted the Johnsons summary judgment was that the court concluded that the parties had not entered into an enforceable contract since the written agreement had been signed or executed only by the Johnsons and not by the Conleys. The court was, in effect, concerned that an appropriate

written contract had not been properly executed and that, under the circumstances, the agreement was not legally enforceable.

West Virginia law does require that contracts for the sale of land, to be enforceable, must be in writing and signed. Specifically, West Virginia's so-called Statute of Frauds, W. Va.Code 36–1–3 provides:

No contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent. But the consideration need not be set forth or expressed in the writing, and it may be proved by other evidence.

■ In a number of cases, this Court has examined this statute and addressed the question of the type of signature, or execution, which is necessary to render such a contract, which must be in writing and signed, enforceable. Those cases indicate that the written memorandum of a contract need not be signed by every party, but only by the party "to be charged," that is, the party being sued. The Court's conclusion is summarized in Syllabus Point 4 of *Hamrick v. Nutter*, 93 W.Va. 115, 116 S.E. 75 (1923):

Our statute of frauds providing that no action shall be brought upon any contract for the sale or lease of real estate or upon any agreement that is not to be performed within a year, unless such contract, or memorandum thereof, be in writing and signed by the party to be charged thereby, or his agent, is satisfied by the signature to the contract of the party to be charged thereby only, whether the suit to enforce it be in law or in equity.

In *Monongah Coal & Coke Company v. Fleming*, 42 W.Va. 538, 26 S.E. 201 (1896), the Court also specifically stated that a contract for the sale of real estate, in order to be binding, need not be signed by both parties, but only by the party being charged or being sued.

In the present case, the Conleys sued the Johnsons, and there is no question of fact that the Johnsons, the parties being sued, or the parties being charged, did sign the writ-

ten memorandum of agreement between the parties. Given this, and given the fact that the law requires that only the parties being charged must sign to render a contract valid, this Court believes that the writing and signing requirements of W. Va.Code 36–1–3 were satisfied and that the failure of the Conleys to sign in no way justified a grant of judgment to the Johnsons.

It appears that the circuit court was also apparently concerned over whether the Johnsons and the Conleys reached a meeting of the minds and whether there was sufficient mutuality in the undertakings by the parties to support the conclusion that there was an enforceable contract. By granting summary judgment, the court apparently concluded that there was not.

■ As a general proposition, it is recognized that the questions of whether parties have reached a meeting of minds in an agreement situation and whether their undertakings have involved mutuality, are ordinarily ones of fact. As stated in 17B C.J.S. *Contracts* § 771 (1999):

Whether the parties to an alleged contract intended to enter into an agreement, whether there was mutual assent or a meeting of the minds at the time of entry into the contract, and in the case of a written contract, whether the instrument embraced the real agreement of the parties, are questions of fact to be submitted to the trier of fact if the evidence warrants; in such a case decision of the issue by the court is improper.

By contrast, if there is no dispute as to the terms used and they are unambiguous, it is a question of law for the court to determine whether the minds of the parties have met, both in the case of verbal and written contracts.

Further, it has been held that summary judgment is rarely appropriate where there is a meeting-of-the-minds question. In the case of *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979), the court, in considerable depth, explained the rationale for holding that summary judgment is rarely appropriate where there are meeting-of-the-

minds and mutuality questions. The court said:

The essence of contract formation is, in the traditional formulation, a "meeting of the minds" of the contracting parties, or in the more accurate contemporary formulation, their manifestations of mutual asset to a bargained-for exchange of promises or performances. *See Restatement (Second) of Contracts* §§ 19–23 (Tent. Draft Nos. 1 7, 1973). The latter formulation makes plain what the former certainly contemplated but obscured, that the intentions manifested in negotiations rather than any had but not disclosed are controlling. *Id.* § 19, Comment c; *id.* § 21B. This being so, disputes about whether a contract has or has not been formed as a result of words and conduct over a period of time are quintessentially disputes about "states of mind," since they involve not only the subjective intentions had by the several parties but what "states of mind," what understandings, their manifestations of intention may have induced in others. These subjective states and objective manifestations of intention present interpretive issues traditionally understood to be for the trier of fact. *See, e.g., Cram v. Sun Insurance Office, Ltd.,* 375 F.2d 670, 674 (4th Cir.1967). While there may of course be situations in which the manifestations of intention of both parties to be bound, or of either not to be bound, are so unequivocal as to present no genuine issue of fact, this will but rarely be so in protracted negotiations involving a "jumble of letters, telegrams, acts, and spoken words." *Restatement (Second) of Contracts, supra* § 21A, Comment a. Ordinarily in such cases, the issue whether there has at any time been the requisite manifestation of mutual assent to a bargained exchange will be one of fact in genuine dispute so as to preclude summary judgment. *See Cram v. Sun Insurance Office, Ltd.,* 375 F.2d at 674.

597 F.2d at 414–15.

■ In the present case, the manifestations of the understandings and intentions of the parties are not plainly unequivocal from the memorandum prepared by Martha R. Johnson. Additionally, the Johnsons themselves raise an intention issue and suggest that the controversy be resolved by looking outside the memorandum by asserting that the Conleys knew that they were to receive resubdivided lots. It is plain, on the other hand, that the Conleys are taking the position that they believed that they were to take lots according to the plat prepared prior to the resubdivision of Lot 7.

Given the nature of the factual development of the case thus far, the Court believes that, at the very least, further development of the evidence is desirable to clarify what the understandings and intentions of the parties were. In effect, the questions of meeting of the minds and mutuality should be resolved by the trier of fact after full development of the evidence. In light of this, the Court believes that summary judgment on these questions is inappropriate.

For the reasons stated, this Court believes that the judgment of the circuit court should be reversed, and this case should be remanded for further development.

Reversed and remanded.