618 S.E.2d 415

**Mark WOOD, a West Virginia resident and class representative; Patricia Compton, a Virginia resident and class representative; Jack Cecil, a Virginia resident and class representative; Steve Pierce, an Ohio resident and class representative; Sid Nash, a Virginia resident and class representative, Plaintiffs Below, Appellants,**

v.

**ACORDIA OF WEST VIRGINIA, INC., a West Virginia corporation, d/b/a Acordia Mid–Atlantic, Inc.; and Acordia, Inc., a Delaware corporation, Defendants Below, Appellees.**

No. 31863.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 23, 2005.

Filed: July 7, 2005.

Kevin W. Thompson, Esq., Law Offices of Kevin Thompson, New Orleans, Louisiana, Anthony J. Majestro, Esq., Powell & Majestro, Charleston, for the Appellants.

Gerard R. Stowers, Esq., J. Mark Adkins, Esq., Jill E. Hall, Esq., Bowles, Rice, McDavid, Graff & Love, Charleston, for the Appellees.

Justice BENJAMIN delivered the Opinion of the Court.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

BENJAMIN, Justice.

This action is before this Court upon the appeal of Mark Wood, *et al.*, from a summary judgment granted in the Circuit Court of Mercer County, West Virginia, on January 26, 2004, in favor of the appellees, Acordia of West Virginia, Inc., a West Virginia corporation, and its parent company, Acordia, Inc., a Delaware corporation. The appellants, Mark Wood, Patricia Compton, Jack Cecil, Steve Pierce and Sid Nash, filed the action on behalf of themselves and all current and former employees, insurance agents and brokers of Acordia to challenge the validity of a restrictive covenant included in their Employment Agreement. The covenant provided that, upon termination of employment, such an employee shall not solicit Acordia's customers, nor solicit the prospective customers the employee contacted while working for Acordia, for a period of two years.

In granting summary judgment, the circuit court observed that there are two types of restrictive covenants utilized to safeguard an employer's protectable business interests either of which are commonly found in employment agreements: (1) covenants not to compete and (2) non-piracy provisions, also known as non-solicitation provisions or hands-off provisions. Specifically, the circuit court indicated that, whereas a covenant not to compete restricts a former employee from engaging in a business similar to that of the employer within a designated time and territory, a non-piracy provision is less restrictive and precludes the former employee from soli-

citing the employer's customers or making use of the employer's confidential information while, at the same time, allowing the former employee to generally compete with the employer in the same market. In that regard, the circuit court concluded that the restrictive covenant in this action was a non-piracy provision and upheld its validity as reasonable and necessary to protect Acordia's legitimate business interest in its customer and contacted prospective customer accounts for the two year period.

This Court has before it the petition for appeal, all matters of record and the memoranda of law and argument of counsel. Upon consideration thereof, and after a careful review of the authorities in this area of the law, this Court is of the opinion that the circuit court was correct in its analysis of the restrictive covenant contained within the Employment Agreement and that the granting of summary judgment in favor of Acordia was warranted. Accordingly, the January 26, 2004, order of the Circuit Court of Mercer County is affirmed.

I.

Factual and Procedural Background

Acordia of West Virginia, Inc., and its parent company, Acordia, Inc. (hereinafter collectively referred to as "Acordia"), are engaged in providing insurance brokerage services in a number of states, including West Virginia. This action concerns Acordia's commercial insurance services rather than its personal insurance services. The appellants, Mark Wood, *et al.*, were, primarily, sales employees of Flat Top Insurance Company who retained their employment when Flat Top was acquired by Acordia in 1996. The appellants have since left Acordia and have continued working in the insurance industry in varying degrees.[1]

Between 1995 and 1999, while working for Acordia, the appellants executed Employment Agreements which provided for their continued employment and which stated that, through their work, they would be given access to Acordia's "client base and confidential information related to customer accounts, insurance needs and histories, information relating to policy expirations, insurance programs and the like [.]" In relation to such access, the Agreement contained the following restrictive covenant:

> For a period of two years after Employee's employment relationship with Employer has terminated for any reason, regardless of whether the termination was initiated by Employer or by Employee, Employee shall not, on Employee's own behalf or on behalf of any other person, firm, corporation, association or other entity, either directly or indirectly, solicit, sell, service, create, manage or implement any kind of service or product offered by Employer to any person, company, firm or corporation: (1) who is a client, customer or insured of Employer at the time Employee's employment with Employer is terminated; (2) who was a client, customer or insured of Employer at any time within the two year period immediately preceding Employee's termination; or (3) whom Employee called upon while in the employ of Employer as a prospective client, customer or insured during the two year period immediately preceding the termination of Employee's employment.[2]

The Agreement did not mention any geographic or territorial limitation with regard to the restrictive covenant. Nevertheless, the Agreement also contained the following additional provision: "Both Employer and Employee agree that this Agreement does not prohibit Employee from leaving Employ-

---

1. Appellants Mark Wood, Patricia Compton, Jack Cecil, Steve Pierce and Sid Nash were all employed by Acordia of West Virginia, Inc., following the Flat Top acquisition. After their subsequent departure from Acordia, Wood and Compton were employed by a company known as Murphy Insurance and, later, worked for an insurance agency known as Davis, Litton and Harman. Upon leaving Acordia, appellant Cecil worked in the insurance industry on a limited

basis, while appellant Pierce remained in the industry full time. Appellant Nash retired from Acordia but expressed a desire to return to the insurance business.

2. The Employment Agreement provided that, in the event of a breach by the employee of the restrictive covenant, Acordia would be entitled to injunctive relief and damages.

er and working directly or indirectly for a competitor or from forming a business in the same industry, so long as Employee honors the terms and conditions of this Agreement."

On April 23, 2001, the appellants filed the original complaint in this action in the Circuit Court of Mercer County. The appellants instituted the action as a class action pursuant to Rule 23 of the West Virginia Rules of Civil Procedure on behalf of themselves and all current and former employees, insurance agents and brokers of Acordia who signed the Employment Agreement containing the restrictive covenant.[3] The appellants sought declaratory relief invalidating the restrictive covenant, damages, and an injunction against the covenant's enforcement.

In October 2003, Acordia filed a motion for summary judgment. Acordia asserted that the nature of the restrictive covenant in the Employment Agreement was that of a non-piracy provision because, although it restricted the appellants from making use of Acordia's customer and contacted prospective customer accounts for a two year period, it expressly allowed the appellants to compete in the same market. The appellants, on the other hand, asserted that the restrictive covenant was, in reality, a covenant not to compete which wrongfully foreclosed their ability to earn a livelihood as insurance agents and brokers in the commercial insurance industry. In that regard, the appellants argued, *inter alia*, that the failure of the covenant to mention any geographic or territorial limitation and its failure to adequately define or specify the customers encompassed by the restriction rendered the covenant overly broad and unenforceable.

Following a hearing, the circuit court concluded that the restrictive covenant was valid and enforceable, and the motion for summary judgment was granted. Identifying the covenant as a non-piracy provision rather than a covenant not to compete, the order of January 26, 2004, stated:

Because the covenants in the Employment Agreements of the plaintiffs only restrict the terminated employees from soliciting customers of their former employer, Acordia of West Virginia, Inc., and did not preclude the [plaintiffs] from working in the same business as Acordia of West Virginia, Inc., for certain time periods in specified areas, this Court finds that the restrictive covenants in each Employment Agreement were "anti-piracy" or "hands-off" or "non-solicitation" covenants and were not non-competition covenants. Since such a restrictive covenant is less restrictive on the employee, it ordinarily is not deemed unreasonable or oppressive and is enforceable as long as it is no broader or restrictive than necessary to protect the employer's legitimate business interest. * * *

[Here,] the restrictive covenant was not too broad or restrictive than reasonably necessary to protect Acordia of West Virginia, Inc.'s, legitimate business interest and good will. Had the plaintiffs been prevented from engaging in work for which they had been trained, or permanently prevented from contacting customers of Acordia of West Virginia, Inc., then this Court's decision would have been different. * * * The plaintiffs may, without restraint, engage in competition with Acordia of West Virginia, Inc., for sales to all persons or companies other than customers of Acordia of West Virginia, Inc., and even with those persons or companies after the two-year period [.]

In September 2004, this Court granted the appeal of appellants Mark Wood, *et al.*, from the order of January 26, 2004.

## II.

### Standards of Review

Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper where the record demonstrates "that there is no genuine issue as to

---

**3.** The record is unclear as to the number of current and former employees of Acordia included for purposes of the appellants' class action. The number ranges from 79 current and 27 former employees to 202 current and 103 former employees. A possible explanation of the discrepancy is that the first set of numbers relates solely to Acordia of West Virginia, Inc., and that the second set relates to the parent company, Acordia, Inc.

any material fact and that the moving party is entitled to a judgment as a matter of law." *Mueller v. American Electric Power Energy Services,* 214 W.Va. 390, 392–93, 589 S.E.2d 532, 534–35 (2003); 11A M.J., *Judgments and Decrees,* § 217.1 (Michie 1997). As this Court explained in syllabus point 7 of *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961):

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe the constitutional right of a party to a trial by jury; it is not a substitute for a trial or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.

Syl. pt. 3, *Harrison v. Town of Eleanor,* 191 W.Va. 611, 447 S.E.2d 546 (1994).

▪ Specifically, syllabus point 3 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), holds: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 2, *Stewart v. George,* 216 W.Va. 288, 607 S.E.2d 394 (2004); syl. pt. 1, *Mueller, supra;* syl. pt. 2, *Cantrell v. Cantrell,* 213 W.Va. 372, 582 S.E.2d 819 (2003); syl. pt. 2, *Conley v. Johnson,* 213 W.Va. 251, 580 S.E.2d 865 (2003).

▪▪ Upon appeal, the entry of a summary judgment is reviewed by this Court *de novo. Redden v. Comer,* 200 W.Va. 209, 211, 488 S.E.2d 484, 486 (1997); syl. pt. 1, *Koffler v. City of Huntington,* 196 W.Va. 202, 469 S.E.2d 645 (1996); syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Nevertheless, as this Court stated in syllabus point 3 of *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997): "Although our standard of review for summary judgment remains *de novo,* a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." Syl.,

*Hively v. Merrifield,* 212 W.Va. 804, 575 S.E.2d 414 (2002); syl. pt. 3, *Glover v. St. Mary's Hospital,* 209 W.Va. 695, 551 S.E.2d 31 (2001); syl. pt. 2, *State ex rel. Department of Health and Human Resources v. Kaufman,* 203 W.Va. 56, 506 S.E.2d 93 (1998).

▪ Moreover, subject to any underlying factual determinations which may arise, it is the province of the circuit court, and not of a jury, to interpret a written contract, syl. pt. 1, *Toppings v. Rainbow Homes, Inc.,* 200 W.Va. 728, 490 S.E.2d 817 (1997), syl. pt. 1, *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937), syl. pt. 6, *Franklin v. T.H. Lilly Lumber Co.,* 66 W.Va. 164, 66 S.E. 225 (1909), which, as in the case of summary judgment, is also reviewed by this Court *de novo.* See in support of *de novo* review, *Monzingo v. Alaska Air Group, Inc.,* 112 P.3d 655, 658–59 (Alaska—2005), stating that a grant of summary judgment based upon contract interpretation is subject to *de novo* review because interpretation of contract language is a question of law. See also, syl. pt. 2, *Marlin v. Wetzel County Board of Education,* 212 W.Va. 215, 569 S.E.2d 462 (2002).

## III.

### Discussion

▪ As stated above, the circuit court concluded that the restrictive covenant in this action was a non-piracy provision and upheld its validity as reasonable and necessary to protect Acordia's legitimate business interest in its customer and contacted prospective customer accounts for the two year period. As syllabus point 3 of *Reddy v. Community Health Foundation of Man,* 171 W.Va. 368, 298 S.E.2d 906 (1982), holds: "An inherently reasonable restrictive covenant is presumptively enforceable in its entirety upon a showing by the employer that he has interests requiring protection from the employee." *Torbett v. Wheeling Dollar Savings & Trust Company,* 173 W.Va. 210, 213 n. 5, 314 S.E.2d 166, 169 n. 5 (1983).

The requirement that the employer must show a protectable business interest to be safeguarded in relation to the employee is generally common to the validity of both

covenants not to compete and non-piracy agreements, and, as this Court has noted in the past, confidential lists of an employer's customers are among the interests which may be protected by such restrictive covenants. See, *Torbett, supra*, 173 W.Va. at 213, 314 S.E.2d at 169, stating that a protectable business interest "involves confidential information unique to an employer, customer lists generated by it, or trade secrets [;]" *Reddy, supra*, 171 W.Va. at 375, 378–79, 298 S.E.2d at 912, 916, stating that courts are reluctant to permit the competitive use of customer lists and that the conversion by an employee of "trade secrets or customer lists" are likely to injure the employer's business; and *Helms Boys, Inc. v. Brady*, 171 W.Va. 66, 67, 297 S.E.2d 840, 842 (1982), stating that this Court "has enforced restrictive covenants when the interest is of a unique or confidential nature, such as a trade secret or customer list." [4]

Also subject to protection in conjunction with a confidential list of customers would be certain types of information, pertaining to the insurance industry, generated through the employer which specifically relates to each customer's account. Such information would include the date the customer's policy expires, the amount of the coverage and premiums and the property of the customer so insured. In the absence of a restrictive covenant, such information would enable a former employee of the insurance company to unfairly target a customer shortly before the policy expires in order to secure a new policy for a different insurer. *Shrewsbery v. National Grange Mutual Insurance Company*, 183 W.Va. 322, 326, 395 S.E.2d 745, 749 (1990). Thus, in this action, the restrictive covenant must be viewed *in pari materia* with the provision found in the same section of the Employment Agreement stating that sales employees of Acordia would be given access to Acordia's "client base and confiden-

tial information related to customer accounts, insurance needs and histories, information relating to policy expirations, insurance programs and the like [.]"

In distinguishing covenants not to compete from non-piracy provisions, the circuit court relied upon the following discussion set forth by the Court of Appeals of Arizona in *Hilb, Rogal and Hamilton Company v. McKinney*, 190 Ariz. 213, 946 P.2d 464 (1997):

> There are two types of restrictive covenants: covenants not to compete and anti-piracy, or "hands off," agreements. A covenant not to compete precludes former employees from working in the same business as the employers for certain time periods in specified areas. * * * [An anti-piracy agreement] restricts the terminated employee from soliciting customers of his former employer or making use of confidential information from his previous employment. * * * Because it is less restrictive on the employee (and thus on free market forces) than a covenant not to compete, an anti-piracy agreement ordinarily is not deemed unreasonable or oppressive. * * * A restrictive covenant—whether a covenant not to compete or an anti-piracy agreement—is enforceable as long as it is no broader than necessary to protect the employer's legitimate business interest.

190 Ariz. at 216, 946 P.2d at 467.

Non-piracy provisions have been upheld in various jurisdictions: *Kovarik v. American Family Insurance Group*, 108 F.3d 962 (8th Cir.1997), non-solicitation clause in insurance agent agreement, which did not prohibit agent from accepting employment with another insurer, but only from soliciting his former clients for one year, was not invalid on restraint of trade grounds; *Alpha Tax Services v. Stuart*, 158 Ariz. 169, 761 P.2d 1073 (1988), provision in employment contract prohibiting former employees from soli-

**4.** The following general principle appears in C.T. Drechsler, Annotation, *Enforceability of Restrictive Covenant, Ancillary to Employment Contract, as Affected by Duration of Restriction*, 41 A.L.R.2d 15, § 14 (1955):

> The most important single asset of most businesses is their stock of customers. Protection of this asset against appropriation by an employee is recognized as a legitimate interest

of the employer. A restrictive covenant, therefore, fulfils the first requirement on which its enforceability depends, if it is necessary to protect the employer against loss of his customers.

With regard to "trade secrets," see the West Virginia Uniform Trade Secrets Act. *W.Va. Code*, 47–22–1 (1986), *et seq.*

citing tax preparation service's customers or maintaining client list was not a covenant not to compete but an "anti-piracy" or "hands-off" agreement and was not invalid; *Balasco v. Gulf Auto Holding, Inc.*, 707 So.2d 858 (Fla.Dist.Ct.App.1998), upholding a non-piracy agreement prohibiting former sales manager from soliciting or influencing other employees to leave the employer's automobile dealership; *Mathis v. Orkin Exterminating Company*, 254 Ga.App. 335, 562 S.E.2d 213 (2002), upholding nonsolicit, noncompete and anti-piracy clauses against a former employee of a pest-control company; *Leatherman v. Management Advisors*, 448 N.E.2d 1048 (Ind.1983), trial court did not abuse its discretion in determining that insurance agency had a reasonable likelihood of success of showing that there was consideration supporting the non-piracy term of its employment contract with agent, and, therefore, the grant of a preliminary injunction against the agent was proper.

■ Accordingly, this Court holds that whereas a covenant not to compete in an employment agreement between an employer and an employee restricts the employee from engaging in business similar to that of the employer within a designated time and territory after the employment should cease, a non-piracy provision, also known as a non-solicitation or hands-off provision, in an employment agreement, restricts the employee, should the employment cease, from soliciting the employer's customers or making use of the employer's confidential information. Although both covenants not to compete and non-piracy provisions are utilized to safeguard an employer's protectable business interests, non-piracy provisions, which ordinarily do not include territorial limits, are less restrictive on the employee and the economic forces of the marketplace.

■ In addition, we hold that although a non-piracy provision in an employment agreement may appear reasonable on its face when viewed within the four corners of the agreement, the ultimate validity of such a provision is dependent upon: (1) whether the employer has a protectable business interest to be safeguarded in relation to the employee, (2) the extent to which the non-piracy provision reasonably and fairly protects that interest and (3) whether the non-piracy provision unjustly restricts the employee from engaging in the business activity he or she seeks to pursue. Whereas the burden is on the employer with regard to factors (1) and (2) above concerning the showing of a protectable business interest and the reasonableness of the non-piracy provision, the burden in on the employee with regard to factor (3) concerning whether the provision constitutes an unjust restriction.

■ In this case, Acordia established that it had a protectable business interest in its customer and contacted prospective customer accounts and its "confidential information related to customer accounts, insurance needs and histories, information relating to policy expirations, insurance programs and the like," and that such interest was reasonably protected by the restrictive covenant. As the circuit court stated in the January 26, 2004, order, the covenant "was narrowly limited in scope, had a legitimate and rational purpose, and most importantly, the provision had a very limited effect on the employees who were allowed to work in the insurance industry immediately and without delay." As noted above, upon leaving Acordia, the appellants continued to work in the insurance industry in varying degrees. In that regard, the absence of a geographic or territorial limitation in the covenant *a fortiori* supports its validity.

Consequently, the circuit court was warranted in determining that the restrictive covenant constituted a non-piracy provision rather than a covenant not to compete.

## IV.

### Conclusion

Upon all of the above, this Court is of the opinion that the circuit court was correct in its conclusion that the restrictive covenant contained within the Employment Agreement executed by the appellants constituted a valid and enforceable non-piracy agreement. All other issues raised by the appellants are without merit.

Accordingly, the granting of summary judgment in favor of the appellees, Acordia of West Virginia, Inc., and Acordia, Inc., as reflected in the January 26, 2004, order of the Circuit Court of Mercer County, West Virginia, is affirmed.

Affirmed

STARCHER, J., dissenting.

I dissent from the majority opinion because the restrictive covenant in the employment agreement unjustly restricts the petitioners from engaging in the business activities they seek to pursue.

A restrictive covenant—whether called a covenant not to compete or an non-piracy agreement—is unenforceable if, by its terms, the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family, or if the restriction imposes an undue hardship on the employee.

The majority and the circuit court are in error in concluding that the covenant "was narrowly limited in scope, . . . and most importantly, the provision had a very limited effect on the employees who were allowed to work in the insurance industry immediately and without delay." (Circuit court order.)

By characterizing the restrictive covenant as a "non-piracy" agreement, the majority suggests that the employment contract is substantially less restrictive than a "non-compete" agreement on the employee and on the economic forces of the marketplace.

However, a "non-piracy" agreement may be very restrictive in its scope and results. That is the case here.

The record showed that Acordia has taken over every major local competitor. Acordia insurance salesmen stated in depositions that "all prospects in the [West Virginia] market were already spoken for by other Acordia salesman [sic]."

In this climate, the petitioners were restricted from contacting any *current* clients of Acordia, any *former* clients of Acordia, and any *prospective* clients that Acordia had contacted during the two-year period following the petitioners' termination of employment.

Contrary to the majority's assertion that "non-piracy" agreements are inherently less restrictive than "non-compete" agreements on free market forces, it seems that Acordia is, with a "non-piracy" agreement, effectively preventing all competition from former employees. *This result the law will not permit.*

For these reasons, I respectfully dissent.