792 S.E.2d 613

**CONSOL ENERGY, INC., Defendant Below, Petitioner**

v.

**Michael HUMMEL, et al., Plaintiffs Below, Respondents**

No. 15–1040

Supreme Court of Appeals of West Virginia.

Submitted: October 11, 2016

Filed: October 26, 2016

---

Charles F. Johns, Esq., Christopher A. Lauderman, Esq., Steptoe & Johnson PLLC, Bridgeport, West Virginia, Counsel for the Petitioner.

Robert P. Fitzsimmons, Esq., Clayton J. Fitzsimmons, Esq., Fitzsimmons Law Firm PLLC, Wheeling, West Virginia, Joseph J. John, Esq., Anthony I. Werner, Esq., John & Werner Law Offices, PLLC, Wheeling, West Virginia, Counsel for the Respondents.

Chief Justice Ketchum:

This action is before this Court upon the appeal of CONSOL Energy, Inc. ("CONSOL"), defendant below, from the July 27, 2015, order of the Circuit Court of Marshall County granting summary judgment for Michael Hummel and other coal miners (collectively the "plaintiffs") who worked in coal mining operations under Consolidated Coal Company, a wholly-owned subsidiary of CONSOL.[1] CONSOL sold Consolidated Coal Company to Murray Energy Corporation in December 2013.

Prior to the sale to Murray Energy Corporation, the plaintiffs' terms of employment included CONSOL's Equity Incentive Plan. The Equity Incentive Plan provided for the award of CONSOL common stock to the plaintiffs in units known as Restricted Stock Units ("RSUs"). The award of RSUs was

---

1. There are potentially 300 to 350 coal miners affected by this litigation. The circuit court's review of certification of this matter as a class action under Rule 23 of the *West Virginia Rules of Civil Procedure* has been stayed pending this appeal.

By order entered on September 22, 2015, the July 27, 2015, order was designated a final judgment pursuant to Rule 54(b). Rule 54(b) states, in part, that a circuit court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." *See Mason v. Smith*, 233 W.Va. 673, 675 n. 1, 760 S.E.2d 487, 489 n. 1 (2014).

subject to a three-year vesting schedule. For example, if CONSOL granted an RSU award in 2011, a third of the awarded shares would vest on each of the award date anniversaries in 2012, 2013, and 2014, if the plaintiff was employed with CONSOL and its subsidiaries on that date. When RSUs were awarded, CONSOL presented each plaintiff with an Award Agreement which set forth the terms and conditions of the award and the vesting schedule.

Pursuant to the Award Agreement, the vesting of RSUs would accelerate upon the occurrence of certain events, such as a plaintiff's retirement or death. The acceleration event in controversy is the phrase "change in control," triggered herein by CONSOL's sale of Consolidated Coal Company to Murray Energy Corporation.

The issue before this Court is whether CONSOL or whether its subsidiary, Consolidated Coal Company, must undergo a "change in control" to accelerate the vesting of the plaintiffs' RSUs under CONSOL's Equity Incentive Plan and Award Agreement. CONSOL contends that "change in control" relates solely to CONSOL itself, not its subsidiary, and, therefore, the sale of Consolidation Coal Company was not an accelerating event under the Equity Incentive Plan and Award Agreement. CONSOL therefore asserts that the plaintiffs' unvested RSUs are forfeited.

The plaintiffs, who were never directly employed by CONSOL, emphasize that the Equity Incentive Plan and Award Agreement were all about the RSUs the plaintiffs could earn through their work with CONSOL's subsidiary, Consolidation Coal Company. The plaintiffs therefore insist that the phrase "change in control" necessarily includes CONSOL's subsidiaries, not just CONSOL alone. Consequently, the sale to Murray En-

ergy Corporation triggered accelerated vesting of the RSUs. Moreover, the plaintiffs point out that the Award Agreement expressly refers to CONSOL, "including its subsidiaries."

This Court is of the opinion that CONSOL's sale of Consolidated Coal Company constituted a "change in control" under CONSOL's Equity Incentive Plan and Award Agreement, the occurrence of which accelerated the vesting of the plaintiffs' RSUs. Accordingly, the July 27, 2015, order of the Circuit Court of Marshall County granting summary judgment for the plaintiffs is affirmed.[2]

### I. Factual Background

CONSOL is a Delaware corporation engaged in the natural gas and coal business and conducts mining operations in West Virginia. The plaintiffs are coal miners who were employed by CONSOL's subsidiary, Consolidated Coal Company, or by one of Consolidated's own subsidiary corporations. Each plaintiff worked at one of five underground mines in northern West Virginia.

The plaintiffs were participants in CONSOL's Equity Incentive Plan. Under the Plan, the plaintiffs were awarded units of CONSOL's common stock which vested in three equal, annual installments, measured from the award date, over the plaintiffs' period of continued employment. Only CONSOL and not any of its subsidiaries issued the stock under the Plan. For example, if CONSOL awarded units (RSUs) in 2011, one-third of the awarded units would vest on the award date anniversaries in 2012, 2013 and 2014.[3] Thus, complete vesting would occur in 2014, three years after the date of the award (subject to four possible acceleration events set forth in the Award Agreement, discussed *infra*).

The plaintiffs had no right to the RSUs in the absence of either ordinary vesting (under the three-year continuous-employment schedule) or accelerated vesting pursuant to the Award Agreement. As stated by the plaintiffs, under the ordinary vesting schedule, if a plaintiff simply quit or was terminated for cause prior to the completion of the schedule, whatever had not yet vested was considered forfeited.

---

**2.** The summary judgment granted for the plaintiffs was on their liability claim against CONSOL for breach of contract. The parties stipulated that, if the plaintiffs prevail in this Court, the computation of damages will be "mechanical and ministerial."

**3.** Specifically, if a plaintiff were given an award of 99 RSUs in 2011, he or she would receive 33 units each year for the next three consecutive years (2012, 2013 and 2014).

## A. Consol's Equity Incentive Plan

CONSOL's Equity Incentive Plan provides its Board of Directors with broad discretion in the administration of the Plan and employee RSU awards. The Equity Incentive Plan also defines certain terms and phrases. The relevant provisions of the Plan are as follows: Section 1 states, in part, that its purpose is to promote the interests of "the Company" and its shareholders by attracting and retaining eligible directors, officers "and other key employees of the Company and its Affiliates." Section 2(b) provides that "all designations, determinations, interpretations, and other decisions under or with respect to the Plan or any Award shall be within the sole discretion of the Board, may be made at any time and shall be final, conclusive, and binding[.]"

Eligibility for participation in the Equity Incentive Plan is addressed in Section 4 which states that "[a]ny Employee, including any officer or employee-director of the Company or any Affiliate, who is not a member of the Committee, shall be eligible to be designated a Participant." Section 7(a) provides CONSOL's Board of Directors with discretionary authority specific to RSUs:

> Subject to the provisions of the Plan, the Board shall have sole and complete authority to determine the Participants to whom Shares of Restricted Stock and Restricted Stock Units shall be granted, the number of Shares of Restricted Stock and/or the number of Restricted Stock Units to be granted to each Participant, the duration of the period during which, and the conditions under which, the Restricted Stock and Restricted Stock Units may be forfeited to the Company, and the other terms and conditions of such Awards.

Addressing "change in control," Section 12 provides that "in the event that the Company engages in a transaction constituting a Change in Control, the Board shall have complete authority and discretion, but not the obligation, to accelerate the vesting of outstanding Awards and the termination of restrictions on Shares."

Finally Section 16 of the Equity Incentive Plan sets forth the following relevant definitions, "as used in the Plan":

"Affiliate" shall mean (i) any entity that, directly or indirectly, is controlled by the Company, (ii) any entity in which the Company has a significant equity interest ... in either case as determined by the Committee. * * *

"Change in Control" shall mean, unless otherwise defined in the applicable Award Agreement, ... the sale of all or substantially all of the Company's assets. Notwithstanding the foregoing or any provision of this Plan to the contrary, it is intended that the foregoing definition of Change in Control qualify as a change in the ownership or effective control of a corporation, or a change in the ownership of a substantial portion of the assets of a corporation, within the meaning of Treas. Reg. § 1.409A–3(i)(5), and shall be interpreted and construed to effectuate such intent. * * *

"Company" shall mean CONSOL Energy Inc. * * *

"Employee" shall mean an employee or consultant of the Company or of any Affiliate, including any individual who enters into an employment agreement with the Company or an Affiliate which provides for commencement of employment within three months of the date of the agreement.

## B. The Award Agreement

When RSUs were awarded, CONSOL gave each plaintiff an Award Agreement entitled "Letter Regarding Restricted Stock Unit Award Under CONSOL Energy Inc. Equity Incentive Plan ('Plan')." Each Award Agreement included terms and conditions and set forth the award date, the number of awarded shares and the vesting schedule. The relevant provisions of the Award Agreement are as follows: The introductory paragraph of the Award Agreement states that Consol

> (including its subsidiaries, the "Company") hereby awards you restricted stock units under the Plan. The terms and conditions of this award are set forth in this letter, the "Terms and Conditions" attachment hereto and the Plan. To the extent the terms and conditions set forth in this letter or the attachment differ in any way from

the terms set forth in the Plan, the terms of the Plan shall govern.

Although the above provision contains language that "the Plan shall govern," the Award Agreement also states: "In the event of a conflict between any term or provision contained herein and a term or provision of the Plan, the applicable terms and provisions of the Agreement will govern and prevail."

Upon receipt of an Award Agreement, each plaintiff was required to sign the Agreement and return it to CONSOL. The Award Agreement includes a non-competition covenant and a covenant that the plaintiff will not disclose confidential information or trade secrets of CONSOL and its affiliates.[4]

Central to this action are four potential "events" set forth in the Award Agreement which result in accelerated vesting of RSUs awarded under the Equity Incentive Plan. Acceleration as to the first three events is triggered by "Separation from Service with the Company" due to (1) the attainment of age 62, (2) the attainment of age 55 in relation to early retirement or incapacity or (3) death or a reduction in force. The fourth potential event listed in the Award Agreement which results in the accelerated vesting of RSUs, and the focus of the controversy herein is *"completion of a Change in Control (as such term is defined in the Plan)."* (emphasis· added)

The Award Agreement concludes with regard to the four potential events resulting in accelerated vesting:

Notwithstanding the foregoing, in no event will any special vesting of your shares occur should your employment with the Company be terminated for Cause (as such term is defined in the Plan) or should you leave the Company's employ for any reason other than in connection with one of the accelerated vesting events specified above.

### C. The Sale to Murray Energy Corporation

On December 5, 2013, CONSOL sold Consolidated Coal Company and Consolidated's subsidiaries to Ohio Valley Resources, Inc. and Ohio Valley's parent company, Murray Energy Corporation. The sale consisted of five underground coal mines in northern West Virginia and related assets. The plaintiffs were employees of Consolidated Coal Company or its subsidiaries.

At the time of the sale, the plaintiffs had been awarded RSUs. The plaintiffs asserted that they were entitled to accelerated vesting of the unvested portion of the RSUs pursuant to the Award Agreement because a "change in control" occurred when CONSOL sold Consolidated Coal Company. CONSOL, however, maintained that the sale did not constitute a "change in control" under the Award Agreement or the Equity Incentive Plan. Consequently, CONSOL declined to accelerate the awarded but unvested RSUs and declared that the unvested RSUs were forfeited.

### II. Procedural Background

In March 2014, the plaintiffs filed a complaint against CONSOL in the Circuit Court of Marshall County. Soon after, an amended complaint was filed adding additional plaintiffs. The plaintiffs alleged that CONSOL was in breach of contract for failing to accelerate the vesting of the previously awarded RSUs and for failing to deliver the RSUs to the plaintiffs by the date required under the Award Agreement.[5]

---

**4.** The non-competition covenant in the Award Agreement states, in part, that, during the term of employment "and for a period of two years immediately thereafter ... [the plaintiff] will not directly or indirectly engage in any business which is in competition with any line of business conducted by the Company or any of its Affiliates[.]"

The non-disclosure covenant states, in part, that the plaintiff will not during or after the plaintiff's "employment with the Company disclose or use for your own benefit or purposes or the benefit or purposes of any other person, firm, partnership, joint venture, association, corporation or other business organization, entity or enterprise other than the Company and any of its Affiliates, any proprietary confidential information or trade secrets[.]"

**5.** The complaint and amended complaint alleged additional causes of action against CONSOL, including fraud and conversion. However, in September 2015, a second amended complaint was filed limiting the causes of action to breach of contract and estoppel. The plaintiffs agreed that the second amended complaint would not in-

In response, CONSOL asserted that the Award Agreement relied upon by the plaintiffs is subordinate to the Equity Incentive Plan which narrowly defines "change in control" in relation to CONSOL itself, not its subsidiaries. Accordingly, CONSOL asserted that the 2013 sale of its subsidiary, Consolidated Coal Company, was not an accelerating event which would entitle the plaintiffs to the unvested RSUs.

Thereafter, the plaintiffs and CONSOL filed motions for summary judgment. Following a hearing, the circuit court entered an order on July 27, 2015, granting summary judgment for the plaintiffs.

The circuit court concluded that Consol breached its contractual obligation to fully vest the plaintiffs' RSUs. Emphasizing that the introductory paragraph of the Award Agreement states that CONSOL "(*including its subsidiaries*, the 'Company') hereby *awards* you restricted stock units under the Plan," the circuit court determined that the plaintiffs' direct employers experienced a "change in control" as a result of the December 5, 2013, sale. Moreover, the circuit court determined that, although the Equity Incentive Plan defined "Company" to mean "CONSOL Energy, Inc.," there was nothing in that definition that would exclude the plaintiffs' direct employers in relation to the "change in control" and accelerated vesting provisions of the Award Agreement. Consequently, the circuit court ruled that CONSOL owes each plaintiff all RSUs awarded prior to December 5, 2013.

### III. Standards of Review

■ Our consideration of the summary judgment entered for the plaintiffs brings forth well-settled standards of review. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. and Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770

(1963). *Accord* syl. pt. 1, *Grant Thornton, LLP v. Kutak Rock, LLP*, 228 W.Va. 226, 228, 719 S.E.2d 394, 396 (2011). Upon entry of summary judgment, review is *de novo*. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 190, 451 S.E.2d 755, 756 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); *accord City of Morgantown v. Nuzum Trucking Co.*, 237 W.Va. 226, 230, 786 S.E.2d 486, 490 (2016).

The parties agree that there are no questions of fact and that the issue presented is a question of law, *i.e.*, whether CONSOL or whether its subsidiary, Consolidated Coal Company, must undergo a "change in control" to accelerate the vesting of the plaintiffs' RSUs under CONSOL's Equity Incentive Plan and Award Agreement. Both documents provide that the Plan and the Agreement are to be construed in conformity with Delaware law. Nevertheless, the relevant principles of contract law in Delaware and West Virginia are substantially similar. *Compare, e.g., O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 286 (Del. 2001) (Under Delaware law, the interpretation of contractual language is a question of law.) *with Isaacs v. Bonner*, 225 W.Va. 460, 465, 694 S.E.2d 302, 307 (2010) (The interpretation of contract language is a question of law.); *Wood v. Acordia of W. Va., Inc.*, 217 W.Va. 406, 411, 618 S.E.2d 415, 420 (2005) (confirming that summary judgment based upon contract interpretation is subject to *de novo* review, because interpretation of contract language is a question of law.).

### IV. Discussion

■ CONSOL contends that the accelerating event "change in control" relates solely to CONSOL itself, not its former subsidiary, Consolidated Coal Company. As a result, CONSOL asserts that the sale of Consolidated Coal Company to Murray Energy Corporation does not entitle the plaintiffs to the unvested RSUs.

---

clude any tort claims, any claims for incidental and/or consequential damages, punitive damages or a request for attorney fees. Any calculation of damages would be "mechanical and ministerial."

The second amended complaint also sought class action certification under Rule 23 of the *West Virginia Rules of Civil Procedure*, review of which has been stayed pending this appeal. *See* n. 1 herein.

In support, CONSOL relies on the Equity Incentive Plan which defines "Company" to mean "CONSOL Energy Inc." Moreover, CONSOL relies on the Equity Incentive Plan's definition of "change in control" which states, in part, that "change in control" means "the sale of all or substantially all of the Company's assets." On the latter point, CONSOL asserts that, since the sale to Murray Energy was less than 20% of CONSOL's assets, no change in CONSOL took place to trigger accelerated vesting of the plaintiffs' RSU awards. Accordingly, CONSOL insists that there was no breach of contract and that CONSOL is entitled to judgment as a matter of law.[6]

CONSOL's assertions, however, are unconvincing upon a closer look at the Equity Incentive Plan and the Award Agreement. Section 1 of the Equity Incentive Plan states, in part, that the purpose of the Plan is to attract and retain "key employees of the Company and its Affiliates." An additional purpose expressed in the Plan is to motivate such individuals "by means of performance-related incentives." The definition of "employee" under the Equity Incentive Plan includes those who work for an "Affiliate" which, in turn, is defined in a manner to include CONSOL's subsidiaries. References to "Affiliate" are found throughout the Equity Incentive Plan. Thus, the plaintiffs correctly state that, although they did not work directly for CONSOL, the Plan and the Award Agreement were all about the RSUs the plaintiffs could earn through their employment with CONSOL's subsidiary, Consolidation Coal Company.

The Award Agreement expressly refers to CONSOL, "including its subsidiaries," and, although each Agreement was issued in recognition of a plaintiff's service, the Agreement also required prospective obligations,

through the inclusion of a non-competition covenant and a covenant that the plaintiff would not disclose confidential information or trade secrets. *See* n. 4, *supra.* Each Award Agreement was required to be signed by the plaintiff and returned to CONSOL prior to any vesting of the plaintiff's RSUs.

The Award Agreement designates four potential "events" which result in the accelerated vesting of RSUs. Acceleration as to the first three events is triggered by "Separation from Service with the Company" due to the attainment of age 62; early retirement or incapacity; or death or a reduction in force. The fourth potential event is "completion of a Change in Control (as such term is defined in the Plan)."

CONSOL's argument that the fourth accelerating event, "change in control," should be separated out and applied to CONSOL alone, was rejected by the circuit court. This Court finds the circuit court's reasoning persuasive. The July 27, 2015, order states:

[T]he terms and conditions listed within "acceleration of Vesting Events" indicate that the RSUs shall be paid to the employee, even though he does not remain with the company if he separates from service at age 62, takes early retirement at age 55, dies or is laid off because of a reduction in force. This section would never apply to any of the RSU award recipients if Consol's interpretation [of] "company" means only the parent corporation—Consol Energy, Inc. To make any sense of the Plan and terms and conditions of the award letter, the words "company" and "Consol Energy, Inc." must include each subsidiary and employing company. If Consol intended otherwise they could have easily said so, *e.g.* "Consol Energy Inc. means only Consol

---

**6.** In September 2015, the circuit court entered the parties' stipulation that CONSOL would be allowed to supplement the record with the Written Consent of CONSOL's Compensation Committee. Pursuant to the Written Consent, dated November 29, 2013, CONSOL took action to vest some, but not all, of the RSUs that CONSOL states would have been forfeited by the sale to Murray Energy Corporation. CONSOL asserts that, if the sale to Murray constituted a "change in control," the Written Consent would have

been unnecessary since all of the RSUs would have accelerated.

However, the Written Consent, voluntarily issued by CONSOL, is of no moment regarding the plaintiffs' contractual claims under the provisions of the Equity Incentive Plan and the Award Agreement. Moreover, the stipulation which allowed the record to be supplemented with the Written Consent was entered after the July 27, 2015, summary judgment order and should not be considered in this appeal.

Energy, Inc. and none of its subsidiary companies." * * *

This interpretation is corroborated by the actual history of the Plan, and its use of the term "Affiliates" in the introductory paragraph of the Plan together with its specific declaration in the introductory paragraph of the Letter Award which identifies "Consol Energy, Inc. (including its subsidiaries, the 'Company')"

CONSOL's argument that the fourth accelerating event, "change in control," applies to CONSOL alone is further deprived of significance in view of the paragraph in the Award Agreement immediately following the four listed events. Keeping in mind that the plaintiffs never worked directly for CONSOL, that paragraph states:

Notwithstanding the foregoing, in no event will any special vesting of your shares occur should your employment with the Company be terminated for Cause (as such term is defined in the Plan) or should you leave the Company's employ for any reason other than in connection with one of the accelerated vesting events specified above.

As the plaintiffs correctly explain, that paragraph "addresses all of the triggering events, including 'Change in Control,' and must relate to the 'company' for whom Plaintiff is employed." In short, there is nothing among the four triggering events set forth in the Award Agreement which would alert the plaintiffs that only the first three are tied to the company for which they worked, especially where the Award Agreement expressly refers to CONSOL, "including its subsidiaries." *See The Estate of Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) (An unreasonable interpretation produces a result that "no reasonable person would have accepted when entering the contract."); *Dunbar Fraternal Order of Police v. City of Dunbar*, 218 W.Va. 239, 244, 624 S.E.2d 586, 591 (2005) (This Court will not interpret a contract in a manner that creates an absurd result.). *See also Elliott Assocs. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998) (A court must give effect to all terms of the contract and, if possible, "reconcile all the provisions of the instrument.").

An additional matter in controversy is whether there is any ambiguity in the Equity Incentive Plan or the Award Agreement. In syllabus point 1 of *Berkeley County Public Service Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968), this Court made clear that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." *Accord* syl. pt. 2, *Supervalu Operations v. Center Design*, 206 W.Va. 311, 312, 524 S.E.2d 666, 667 (1999); syl. pt. 4, *Pilling v. Nationwide Mut. Fire Ins. Co.*, 201 W.Va. 757, 758, 500 S.E.2d 870, 871 (1997).

Here, the Award Agreement contains a patent ambiguity. The introductory paragraph of the Award Agreement includes the following statement: "To the extent the terms and conditions set forth in this letter or the attachment differ in any way from the terms set forth in the Plan, *the terms of the Plan shall govern*." (emphasis added). Nevertheless, the Award Agreement also states: "In the event of a conflict between any term or provision contained herein and a term or provision of the Plan, *the applicable terms and provisions of the Agreement will govern and prevail*." (emphasis added). Referring to those two provisions, the circuit court determined that "to the extent any ambiguity exists, it must be interpreted most favorably to Plaintiffs."

The circuit court's determination was correct. CONSOL was the preparer of the Equity Incentive Plan and the Award Agreement, the latter requiring the plaintiff's signature and return to CONSOL. Syllabus point 1 of *Charlton v. Chevrolet Motor Co.*, 115 W.Va. 25, 174 S.E. 570 (1934), holds: "Uncertainties in an intricate and involved contract should be resolved against the party who prepared it." *Accord Jochum v. Waste Management of West Virginia*, 224 W.Va. 44, 49, 680 S.E.2d 59, 64 (2009); syl. pt. 8, *Estate of Tawney v. Columbia Natural Resources*, 219 W.Va. 266, 268, 633 S.E.2d 22, 24 (2006). *See Nisbet v. Watson*, 162 W.Va. 522, 530, 251 S.E.2d 774, 780 (1979) (It is well-settled that any ambiguity in a contract must be

resolved against the party who prepared it.); *Combs v. McLynn*, 187 W.Va. 490, 493, 419 S.E.2d 903, 906 (1992) (citing *Nisbet*). *See Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 398 (Del. 1996) ("It is a well-accepted principle that ambiguities in a contract should be construed against the drafter.").[7]

Finally, CONSOL asserts that, by accepting the RSU awards, the plaintiffs agreed to all provisions of the Equity Incentive Plan, including the full and binding authority of CONSOL's Board of Directors concerning the interpretation and administration of the award program. Specifically, CONSOL asserts that it did not prevent the issuance of vested RSUs. Rather, CONSOL exercised its discretion and business judgment to decline from accelerating the unvested RSUs.

However, the Award Agreements, signed by the plaintiffs and returned to CONSOL prior to the sale to Murray Energy Corporation, set forth the award date, the number of awarded shares and the vesting schedule. Thus, the time had passed for CONSOL to exercise its discretionary authority to alter the terms of the plaintiffs' Award Agreements. The circuit court determined that each plaintiff earned and was promised RSUs which had not been paid at the time of the sale of Consolidated Coal Company on December 5, 2013. This Court agrees and finds CONSOL's assertion to be without merit. *See Goldhirsch v. St. George Tower and Grill Owners Corp.*, 142 A.D.3d 1044, 37 N.Y.S.3d 616 (2016) (While a breach of a tenant's proprietary lease by a board of directors may be the best option open to the board, it does not shield the board from liability for breach of contract.); *Willmschen v. Trinity Lakes Improvement Assoc.*, 362 Ill.App.3d 546, 298 Ill.Dec. 840, 840 N.E.2d 1275, 1279 (2005) (It may be good business judgment to walk away from a contract, but that is no defense to a breach of contract claim.).

## V. Conclusion

This Court is of the opinion that the phrase "change in control" under CONSOL's Equity Incentive Plan and Award Agreement necessarily included CONSOL's subsidiary, Consolidated Coal Company and that the December 5, 2013, sale of Consolidated Coal Company and related assets to Murray Energy Corporation triggered the accelerated vesting of the plaintiffs' RSUs. Consequently, CONSOL's failure to accelerate the RSUs and its declaration that the RSUs were forfeited constituted a breach of contract. Accordingly, the July 27, 2015, order of the Circuit Court of Marshall County granting

---

7. Little guidance is provided by the definition of "change in control" (defined separately from "Company") found in the Equity Incentive Plan. The definition states in relevant part:

"Change in Control" shall mean, unless otherwise defined in the applicable Award Agreement, ... the sale of all or substantially all of the Company's assets. Notwithstanding the foregoing or any provision of this Plan to the contrary, it is intended that the foregoing definition of Change in Control qualify as a change in the ownership or effective control of a corporation, or a change in the ownership of a substantial portion of the assets of a corporation, within the meaning of Treas. Reg. § 1.409A–3(i)(5), and shall be interpreted and construed to effectuate such intent.

Whereas the Equity Incentive Plan provides a definition of "change in control," unless otherwise defined "in the applicable *Award Agreement*" (which is effectively defined in the Agreement in the context of the accelerating events), the Award Agreement provides that acceleration of RSUs will occur upon "completion of a Change in Control (*as such term is defined in the Plan*)." (emphasis added). In addition, the definition of "change in control" in the Plan uses the words "Company" and "corporation" without a clear distinction between the two terms.

Moreover, the Treasury Regulation cited in the Equity Incentive Plan's definition of "change in control" is of no moment. CONSOL, referring to Treas. Reg. § 1.409A–3(i)(5), asserted before the circuit court:

The very language of that regulation, however, allows a company to set forth its own definition of Change in Control. *See* Treasury Regulation § 1.409A–3(i)(5)(i) (a "plan may provide for a payment *on a particular type or types of change in control events, and need not provide for a payment on all such events*.") (emphasis added by CONSOL).

Thus, CONSOL maintains that the Treasury Regulation does not expand the Equity Incentive Plan's definition of "change in control." Instead, the Regulation validates the Plan's definition of "change in control" which CONSOL asserts only relates to CONSOL itself. Inasmuch as that assertion simply relates back to the Plan and the parties disagreement over the meaning of "change in control," the assertion is circular and without merit.

summary judgment for the plaintiffs is affirmed.

Affirmed.