# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2018 Term

_____

No. 17-0141

_____

**FILED**
**April 11, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ARTHUR L. CONKEY, Jr., and JO CAROL CONKEY,**
**Defendants Below, Petitioners**

**v.**

**SLEEPY CREEK FOREST OWNERS ASSOCIATION, INC.,**
**Plaintiff Below, Respondent**

_____

**Appeal from the Circuit Court of Morgan County**
**The Honorable Christopher C. Wilkes, Judge**
**Civil Action No. 16-C-29**

_____

**AFFIRMED**

_____

**Submitted: April 3, 2018**
**Filed: April 11, 2018**

**Michael L. Scales, Esq.**
**Michael L. Scales, P.L.L.C.**
**Martinsburg, West Virginia**
**Counsel for the Petitioners**

**Charles S. Trump IV, Esq.**
**Trump & Trump, L.C.**
**Berkeley Springs, West Virginia**
**Counsel for the Respondent**

**JUSTICE KETCHUM delivered the Opinion of the Court.**
**JUSTICE WALKER concurs and reserves the right to file a Concurring Opinion.**

**SYLLABUS BY THE COURT**

1. "Where the terms of a contract are clear and unambiguous, they must be applied and not construed." Syl. pt. 2, *Bethlehem Mines Corp. v. Haden*, 153 W.Va. 721, 172 S.E.2d 126 (1969).

2. "The plain language of W.Va. Code § 36B-3-116(f) (1986) (Repl. Vol. 2005) requires a judgment or decree in any action brought under W.Va. Code § 36B-3-116 to include an award of costs and reasonable attorney's fees for the prevailing party." Syl. pt. 5, *United Bank, Inc., v. Stone Gate Homeowners Ass'n, Inc.*, 220 W.Va. 375, 647 S.E.2d 811 (2007).

**Justice Ketchum**:

This action concerns the Sleepy Creek Forest Subdivision, a residential community located in Morgan County. Arthur L. Conkey, Jr., and Jo Carol Conkey, lot owners in the Subdivision, appeal from the December 22, 2016, order of the Circuit Court of Morgan County. Pursuant to the order, summary judgment was granted for the Subdivision's Association and against the Conkeys for $1,215.00 in delinquent residential assessments and related charges. The Conkeys also appeal from the circuit court's order entered on February 13, 2017, awarding the Association $10,061.25 in attorney's fees.

The Conkeys contend that the delinquent assessments represent certain increases in annual assessments which were never properly voted on by the Association. According to the Conkeys, the increases were, therefore, *ultra vires* with respect to the Subdivision's covenants and restrictions. In addition, the Conkeys contend that the Association's efforts to collect the delinquent assessments violated the West Virginia Consumer Credit and Protection Act and that the Association's imposition of 10% interest on the delinquent assessments was usurious. The Conkeys ask this Court to reverse the summary judgment, grant them partial summary judgment on the Association's liability under the Consumer Credit and Protection Act, and remand this action for a determination of the Conkeys' damages and attorney's fees.

1

The Association contends that the assessments were expressly authorized and properly imposed by the required vote pursuant to the Subdivision's covenants and restrictions. The Association further contends that the imposition of the assessments and other charges were consistent with the law and that attorney fees were warranted.

Upon review, we find that the circuit court reached the correct result. Consequently, we affirm the December 22, 2016, order granting summary judgment in favor of the Association and the February 13, 2017, order awarding the Association attorney's fees.

## I. Factual Background

The Sleepy Creek Forest Subdivision, located in Morgan County, consists of residential lots managed by an Association of lot owners and governed by a Board of Directors. From 1969 forward, each lot in the Subdivision was subject to the restrictions and covenants set forth in the Subdivision's Declaration of Restrictions. The Declaration included a provision that certain maintenance and improvement costs would be paid by the lot owners.

On September 21, 1982, an amended Declaration of Restrictions was recorded in Morgan County. The amended Declaration provided in relevant part:

2

The Declarant hereby declares that all of the property comprising all of the Sections of The Sleepy Creek Forest Subdivision shall be held, sold and conveyed subject to the following easements, restrictions, covenants, reservations and conditions, all of which are for the purpose of enhancing and protecting the value and desirability of real property, and which shall run with the real property, and be binding on all parties having any right, title or interest in the above described property or any part thereof, their heirs, successors and assigns, and shall inure to the benefit of each and every owner thereof.

The amended Declaration of Restrictions designated every owner of a lot within the Subdivision a member of the Association and noted that the initial assessment for each lot would be up to $50.00 per year for the maintenance of roads, rights-of-way and common areas. The amended Declaration provided further:

Any assessment made pursuant to this paragraph, including late fee of Five ($5.00) Dollars, interest at the rate of ten (10%) percent per annum from the date of delinquency, and reasonable attorney's fees incurred in the collection thereof, shall constitute a lien on thie [sic] property until paid and all grantees do bind themselves, their heirs and successors in title to this lien and to the covenants herein written. * * * *This assessment may not be raised by more than ten (10%) percent per year without the written affirmative vote of two-thirds (2/3) of the members of the Association entitled to vote*.

(emphasis added)

The Conkeys became lot owners in the Subdivision after the September 21, 1982, amended Declaration of Restrictions was recorded. The Conkeys purchased four lots between 1988 and 2002 which made up their personal residence. Each conveyance to the Conkeys was subject to the Subdivision's covenants and restrictions.

3

The Association operated on a fiscal year basis, beginning on November 1 and ending on October 31. Bills for assessments for the coming year were ordinarily sent to lot owners in August and were due by November 1. The controversy between the Association and the Conkeys in this action concerns fiscal years 2002-03, 2005-06 and 2015-16. In each of those fiscal years, the Association voted to raise the assessment by more than 10%.

For 2002-03, the minutes of the Association show that the assessment was raised from $75.00 per lot to $100.00 per lot for road maintenance. The result was a 33 1/3% increase by a vote of 30 to 12 (71%). For 2005-06, the minutes show that the assessment was raised from $100.00 per lot to $115.00 per lot to cover the cost of a liability insurance bill in the amount of $889.81. The result was a 15% increase by a vote of 31 to 2 (94%).

Finally, for 2015-16, the assessment was raised from $125.00 per lot to $165.00 per lot, a 32% increase. That increase occurred in two steps. First, the assessment was raised by the Association from $125.00 per lot to $150.00 per lot (a 20% increase) by a vote of 31 to 2 (94%). Second, the Subdivision's Board of Directors raised the assessment by an additional 10% per lot to obtain "needed funds for road repairs / maintenance and delinquent assessments." The result was a $165.00 assessment per lot beginning with the 2015-16 year.

## II. Procedural Background

In April 2016, the Association filed an action in the Morgan County magistrate court against the Conkeys to recover unpaid Subdivision assessments, late fees, interest and costs. The Conkeys removed the action to the Circuit Court of Morgan County and filed an answer and counterclaim.[1] According to the Conkeys, none of the increases in assessments of more than 10% per year had been obtained by the required "written affirmative vote" of two-thirds of the Association's members. The Conkeys asserted that, as a result, they did not owe the Association any assessment in excess of the original $50.00 per year. The Conkeys further asserted that the Association's debt collection efforts violated the West Virginia Consumer Credit and Protection Act, *W.Va. Code*, 46A-1-101 [1974], *et seq.*, and that the Association's imposition of 10% interest on their alleged delinquent assessments was usurious.

The Association filed a motion for summary judgment in July 2016 alleging, *inter alia*, that the assessments and other charges were expressly authorized and correctly imposed pursuant to the Subdivision's 1982 amended Declaration of Restrictions. The Conkeys also filed a motion for summary judgment. In that motion, the Conkeys sought recovery from the Association under the Consumer Credit and Protection Act for improper debt collection practices.

---

[1] *See*, *W.Va. Code*, 50-4-8 [2008] (authorizing removal of a civil action from magistrate court to circuit court prior to trial).

5

On December 22, 2016, the circuit court granted summary judgment in favor of the Association. The Association was awarded $1,215.00, consisting of the delinquent assessments, a late fee, and interest. Summary judgment was also granted in favor of the Association on the Conkeys's counterclaim.[2] In addition, the Association was awarded reasonable attorney's fees to be determined at a later date.

The circuit court's rulings were primarily based on the Subdivision's amended Declaration of Restrictions. The circuit court rejected the Conkeys' assertion that the increased assessments were never properly voted on by the Association. The circuit court concluded: "The records show that any increases in any single year which exceeded 10% over the assessments for the previous year were approved by the affirmative vote of more than two-thirds of the members voting." The circuit court thus found the increases consistent with the requirements of the amended Declaration of Restrictions.

The circuit court further concluded that, although the Consumer Credit and Protection Act applied to the Association's debt collection efforts,[3] no violations occurred because the

---

[2] The Association was awarded $1,160.00 in delinquent assessments, a $5.00 late fee, and $50.00 in interest, totaling $1,215.00. Having denied the counterclaim, the circuit court determined that the Conkeys's motion for summary judgment was moot.

[3] Syl. pt. 2 of *Fleet v. Webber Springs Owners Ass'n, Inc.*, 235 W.Va. 184, 772 S.E.2d 369 (2015), holds:

Homeowners association assessments that are to be used for

late charges on the delinquent assessments were authorized by agreement and by statute. The agreement was the Subdivision's 1982 amended Declaration of Restrictions, and the statute cited by the circuit court was *W.Va. Code*, 36B-3-116 [1986], of the West Virginia Uniform Common Interest Ownership Act.[4]  Subsection (a) of *W.Va. Code*, 36B-3-116 [1986],

improving and/or maintaining common areas of a planned community, including, but not limited to, maintaining common roads and common recreational areas within the community, are an obligation primarily for personal, family, or household purposes, and, therefore, such assessments are "claims" pursuant to W.Va. Code § 46A-2-122(b) (1996) (Repl. Vol. 2006) [of the Consumer Credit and Protection Act].

In 2016, the Legislature added an exclusion from the provisions of the Consumer Credit and Protection Act.  That exclusion, effective on June 8, 2016, and found in *W.Va. Code*, 46A-1-105(a)(3) [2016], states:

(a) This chapter does not apply to:  *  *  *
(3) The obligation of a property owner, lot owner or homeowner in a planned community containing no more than twelve units which is not subject to any development rights or a planned community that provides in its declaration that the annual average common expense liability of all units restricted to residential purposes, exclusive of optional user fees and any insurance premiums paid by the association, may not exceed $300  .  .  .  , or the efforts of property owners' associations or homeowners' associations to collect the same to pay dues, assessments, costs or fees of any kind to a property owners' association or homeowners' association.

The new exclusion, however, does not apply to the Subdivision herein.  The circuit court noted that the Subdivision had no $300.00 cap on assessments as specified in the exclusion.  Moreover, the events surrounding the increases in the assessments challenged by the Conkeys occurred prior to the exclusion's June 8, 2016, effective date.

[4] The Subdivision was created prior to the enactment of the Uniform Common Interest Ownership Act, *W.Va. Code*, 36B-1-101, *et seq.*  However, pursuant to *W.Va. Code*, 36B-1-204(a) [1986], a number of the Act's provisions, including *W.Va. Code*, 36B-3-116, are made applicable to common interest communities created before the Act's effective date.

provides an association with a lien for any assessment (including late charges and interest) from the time the assessment becomes due. In addition, subsection (f) states: "A judgment or decree in any action brought under this section must include costs and reasonable attorney's fees for the prevailing party."

On February 13, 2017, the circuit court entered an order awarding the Association $10,061.25 in attorney's fees.[5] The court noted that allowing the Conkeys to avoid their financial responsibility as members of the Association "is not only inconsistent with the law, but also will provide an enormous incentive for members to pass the cost of collection onto their neighbors when they do not pay their dues."

The Conkeys appeal the December 22, 2016, and February 13, 2017, orders to this Court.

### III. Standards of Review

This Court's consideration of the summary judgment entered for the Association brings forth well-settled standards of review. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna*

---

[5] The order awarded the Association $10,061.25 in attorney's fees and $818.37 in costs, totaling $10,879.62.

*Cas. and Sur. Co. v. Fed. Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

Appellate review of summary judgment is *de novo*. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va.

189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de*

*novo*.").

The facts in the current matter are undisputed, and the issues involve questions of law.

Those issues are contractual in nature insofar as they arise from the September 21, 1982,

amended Declaration of Restrictions. Therefore, *de novo* review is again implicated. *See*

*Wood v. Acordia of W.Va., Inc.*, 217 W.Va. 406, 411, 618 S.E.2d 415, 420 (2005) (Summary

judgment based on contract interpretation is subject to *de novo* review because interpretation

of contract language is a question of law.). *Accord*, *Consol Energy, Inc. v. Hummel*, 238

W.Va. 114, 119, 792 S.E.2d 613, 618 (2016).]

### IV. Discussion

#### A. Assessment Increases

The Subdivision's 1982 amended Declaration of Restrictions provides that an

assessment may not be raised by more than 10% "per year" without the written affirmative

vote of two-thirds of the Association's members. The Conkeys assert that the circuit court

disregarded the "per year" provision and, instead, considered the average increase in

assessments over a period of years. As the Association alleged in its motion for summary

judgment, in the course of thirty-four years, the assessment increases averaged about 3.6% per year, well under the requirement of a two-thirds vote of the members.

The Conkeys' assertion is without merit. Although the circuit court noted the Association's argument regarding the multi-year average, summary judgment was not granted in favor of the Association on that basis. The December 22, 2016, order includes the circuit court's finding that "any increases *in any single* year which exceeded 10% over the assessments for the previous year were approved by the affirmative vote of more than two-thirds of the members voting." (emphasis by the circuit court). That finding is supported by the Association's minutes for fiscal years 2002-03, 2005-06 and 2015-16 which show, for each year, an assessment increase of more than 10%, approved by a vote of more than two-thirds.

The Conkeys next assert that the assessment increases were invalid because the Subdivision's Association and Board of Directors failed to comply with the "written affirmative vote" provision. According to the Conkeys, the two-thirds vote needed to raise assessments by more than 10% per year requires the keeping of written votes from the members themselves, rather than the written reporting of the votes in the minutes of the Association's meetings.

However, nothing in the amended Declaration of Restrictions elevates the manner by which the members voted, whether by individual ballot or otherwise, above the Association's written minutes which constitute the formal record of the proceedings.[6] The record includes the minutes for the years in question, 2002-03, 2005-06 and 2015-16. Although the minutes for 2015-16, reflect the Conkeys' objection to the voting process, there is no evidence to suggest that the respective votes for assessment increases of 30 to 12; 31 to 2; and 31 to 2, were incorrect.

Moreover, the amended Declaration of Restrictions provides that an assessment may not be raised by more than 10% per year without the written affirmative "vote" of two-thirds of the Association's members. The word "vote" appears in the singular, and its use in the context of the Declaration is clear. The Association accurately states:

> Notably, it is not "votes." It is, instead, the vote. Thus, the "written affirmative vote" obviously refers to the overall, aggregate vote, *i.e.*, the total of the individual votes of the members. The "affirmative vote" is the aggregate number (or percentage) in favor of a question voted upon. By the ordinary meaning of these words, it is the affirmative vote, *i.e.*, the "affirmative tally," that must be written.  *  *  *

> The circuit court found correctly that in any year in which the [Conkeys] argue that a vote was required in order for assessments to be raised, a vote was held, and the affirmative vote, as written in the minutes,

---

[6] *See* New Oxford American Dictionary 1115 (3rd ed. 2010) (*minute* - "a summarized record of the proceedings at a meeting - an official memorandum authorizing or recommending a course of action").

11

was sufficient under the covenants and restrictions to make the increases effective.

Syllabus point 2 of *Bethlehem Mines Corp. v. Haden*, 153 W.Va. 721, 172 S.E.2d 126 (1969), holds: "Where the terms of a contract are clear and unambiguous, they must be applied and not construed." *Accord*, syl. pt. 2, *Citynet, LLC v. Toney*, 235 W.Va. 79, 772 S.E.2d 36 (2015). Here, the words "written" and "affirmative" modify the word "vote" (singular), not "votes" (plural). This Court concludes that the phrase "written affirmative vote" in the Declaration of Restrictions clearly refers to the aggregate vote as reflected in the Association's minutes. The Conkeys' assertion to the contrary is without merit.

## B. Attorney's Fees

The Conkeys' next challenge concerns the award to the Association of $10,061.25 in attorney's fees. The Conkeys assert that the circuit court committed error in relying on *W.Va. Code*, 36B-3-116 [1986], which, in subsection (a), provides an association with a lien for assessments (including late charges and interest) and states, in subsection (f), that "[a] judgment or decree in any action brought under this section must include costs and reasonable attorney's fees for the prevailing party." According to the Conkeys, *W.Va. Code*, 36B-3-116 [1986], does not apply because this action was instituted by the Association to collect an unpaid debt, *i.e.*, delinquent assessments, not to enforce a lien. Therefore, subsection (f) provides no basis for the award of attorney's fees.

12

It is undisputed that the property purchased by the Conkeys was subject to a lien for the benefit of the Subdivision. Each deed to the Conkeys' four lots made specific reference to the Declaration of Restrictions which provided the assessment lien and listed the Subdivision's covenants and restrictions. In *Fleet v. Webber Springs Owners Ass'n, Inc.*, 235 W.Va. 184, 190, 772 S.E.2d 369, 375 (2015), this Court recognized that a lien of that nature is a "consensual common law lien" against real property and is valid and enforceable in this State.

Here, the Declaration of Restrictions, as amended in 1982, also addressed the subject of attorney's fees. According to the Declaration, the lien for the benefit of the Subdivision included the assessment, other charges, and attorney's fees *incurred in the collection thereof*. Consequently, *W.Va. Code*, 36B-3-116(a) and (f) [1986], notwithstanding, the amended Declaration of Restrictions, agreed to by the Conkeys, authorized attorney's fees in association with the collection of an unpaid debt, as well as making attorney's fees a component of the Subdivision's lien.

Moreover, inasmuch as attorney's fees are also a component of the lien, subsection (f) is dispositive. Syllabus point 5 of *United Bank, Inc.,v. Stone Gate Homeowners Ass'n, Inc.*, 220 W.Va. 375, 647 S.E.2d 811 (2007), holds: "The plain language of W.Va. Code § 36B-3-116(f) (1986) (Repl. Vol. 2005) requires a judgment or decree in any action brought

13

under W.Va. Code § 36B-3-116 to include an award of costs and reasonable attorney's fees for the prevailing party."[7]

Therefore, the Conkeys' assertion that the Association's action to recover delinquent assessments and other charges precluded the Association from seeking attorney's fees is without merit.

## C. The Consumer Credit and Protection Act

This Court is further of the opinion that no violations of the Consumer Credit and Protection Act occurred regarding the Association's debt collection efforts. The Conkeys rely on *W.Va. Code*, 46A-2-128(d) [1990], which includes the following among debt collection practices considered unfair or unconscionable:

> (d) The collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation *unless such*

---

[7] *See also* Article 4 of the Uniform Common Interest Ownership Act. Although Article 4 is entitled "Protection of Purchasers," *W.Va. Code*, 36B-4-117 [1986], provides:

> If a declarant or any other person subject to this chapter fails to comply with any of its provisions or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. Punitive damages may be awarded for a willful failure to comply with this chapter. *The court, in an appropriate case, may award reasonable attorney's fees*.

(emphasis added)

14

*interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute.*

(emphasis added)[8]

The circuit court determined that the imposition of the late charges on the Conkeys' delinquent assessments was expressly authorized by the amended Declaration of Restrictions. The Declaration provided for a $5.00 late fee, 10% interest on delinquent assessments, and reasonable attorney's fees. In addition, the circuit court determined that the imposition of the late charges was expressly authorized by the Uniform Common Interest Ownership Act, particularly *W.Va. Code*, 36B-3-116 [1986]. As discussed, subsection (a) of that statute provides an association with a lien for an assessment (including late charges and interest), and subsection (f) authorizes reasonable attorney's fees. Moreover, subsection (e) provides, in part, that *W.Va. Code*, 36B-3-116 [1986], "does not prohibit actions to recover sums for which subsection (a) creates a lien."

Thus, pursuant to the amended Declaration of Restrictions, and by statute, the circuit court found no violation of the Consumer Credit and Protection Act. We find the circuit court's analysis correct.

---

[8] Later amendments to *W.Va. Code*, 46A-2-128(d) [1990], are not relevant to this appeal.

15

The record reveals a history of litigation between the Association and the Conkeys over the payment of assessments.  In the order awarding the Association attorney's fees in the current action, the circuit court stated that allowing the Conkeys to avoid their financial responsibility as members of the Association "is not only inconsistent with the law, but also will provide an enormous incentive for members to pass the cost of collection onto their neighbors when they do not pay their dues."

In support, the circuit court cited Justice Loughry's concurring opinion in *Fleet v. Webber Springs Owners Ass'n, Inc.*, 235 W.Va. 184, 772 S.E.2d 369 (2015) which states that the efforts of a homeowners association to collect assessments "arise out of the obligation to ensure that the maintenance of the community is accomplished in a manner that is equally borne by all those who benefit therefrom." 235 W.Va. at 195, 772 S.E.2d at 380.  Moreover, the concurring opinion suggests that a dilatory property owner may cause an association to incur expenses and legal fees in excess of available insurance coverage, resulting in special assessments to be paid by fellow homeowners.[9]

---

[9] Here, for fiscal year 2015-16 the Subdivision's Board of Directors raised the assessment by an additional 10% per lot to obtain "needed funds for road repairs / maintenance *and delinquent assessments*." (emphasis added).

16

This Court concludes that no violations of the Consumer Credit and Protection Act occurred regarding the Association's efforts to collect the late fee, interest on the delinquent assessments, and reasonable attorney's fees.

Finally, the 1982 amended Declaration of Restrictions provides for interest on delinquent assessments "at the rate of ten (10%) percent per annum." Asserting a further violation of the Consumer Credit and Protection Act, the Conkeys contend that the 10% interest is usurious. In support, the Conkeys cite the general, legal rate of interest of 8% set forth in *W.Va. Code*, 47-6-5(b) [1974].[10] The circuit court, however, found that the 10% was not usurious and did not violate the law.

*W.Va. Code*, 36B-3-115(b) [1986], entitled "Assessments for common expenses," provides: "Any past due common expense assessment or installment thereof bears interest at the rate established by the association not exceeding eighteen percent per year." That statute, specific to the Uniform Common Interest Ownership Act, was in effect when the Conkeys purchased the four lots between 1988 and 2002.

---

[10] *W.Va. Code*, 47-6-5(b) [1974], states in part: "Parties may contract in writing for the payment of interest for the loan or forbearance of money at a rate not to exceed eight dollars upon one hundred dollars for a year[.]"

17

Moreover, although the creation of the Subdivision may be traced back to 1969, the 10% interest provision on delinquent assessments appears in the 1982 amended Declaration of Restrictions. In that regard, the circuit court relied on *W.Va. Code*, 36B-1-206(a)(2) [1986], which states:

> (a) In the case of amendments to the declaration, bylaws or plats and plans of any common interest community created before the effective date of this chapter: * * *
> (2) If the result accomplished by the amendment is permitted by this chapter, and was not permitted by law prior to this chapter, the amendment may be made under this chapter.

*W.Va. Code*, 36B-3-115(b) [1986], contemplates amendments to the covenants and restrictions of pre-existing residential subdivisions and expressly permits interest on delinquent assessments at a rate not exceeding 18% per year. In the current matter, the interest did not exceed 10%. The interest allowed under *W.Va. Code*, 36B-3-115(b) [1986], manifests the Legislature's intent to define the narrative regarding common interest ownership communities. We find no merit in the Conkey's assertion of usury.

## V. Conclusion

This Court affirms the Circuit Court of Morgan County's December 22, 2016, order granting summary judgment in favor of the Association and the February 13, 2017, order awarding the Association attorney's fees.

Affirmed.

18